91 N.J. Super. 288 (1966)
219 A.2d 902
ANDREW SAVONICK, MARTIN J. POLSKY AND THE NEW JERSEY HOME BUILDERS ASSOCIATION, A NEW JERSEY CORPORATION, PLAINTIFFS,
v.
THE TOWNSHIP OF LAWRENCE, A MUNICIPAL CORPORATION, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided May 11, 1966.
*289 Mr. Ivan C. Bash, for plaintiffs.
Mr. Harry Heher, Jr., for defendant.
*290 BENNETT, J.S.C. (temporarily assigned).
This is an action in lieu of prerogative writs instituted by plaintiffs Alexander Savonick, Martin J. Polsky and the New Jersey Home Builders Association, a corporation of the State of New Jersey, against defendant, Township of Lawrence seeking the invalidation of an amendatory land-subdivision ordinance requiring a developer of three or more building lots to install certain public improvements prior to final subdivision approval, and to post performance guarantees in the form of an 80% surety bond together with a 20% cash deposit to insure the completion of the remaining required improvements.
Despite formal protestations by plaintiff Savonick that his property rights were violated in contravention of the New Jersey and Federal Constitutions, the Township of Lawrence adopted an ordinance on March 3, 1965 entitled "An Ordinance to Amend and Supplement the `Land Subdivision Ordinance' of the Township of Lawrence in the County of Mercer and the State of New Jersey, adopted May 19, 1954, as Amended and Supplemented." The ordinance provides, inter alia, as follows:
"No final plat shall be finally approved by the Planning Board until the satisfactory completion of all such required improvements has been certified to the Board by the Township Engineer, or unless the subdivision owner or owners shall likewise have satisfactorily completed (1) all required utility installations and their appurtenances, including water mains, gas, sanitary sewers, and drainage, all in accordance with Township specifications and as may be required by the Planning Board; (2) completed grading and constructed surfacing of the "base course" of all streets in accordance with Township specifications and as required by the Planning Board, and filed with the Township Committee a Performance Bond sufficient in amount to cover eighty (80) per cent of the cost of all other such improvements required by the Planning Board, together with either cash or a cashier's or certified check sufficient in amount to cover the remaining twenty (20) per cent of the cost of said improvements, all as estimated by the Planning Board, or by such other Township agency, official or department as may be indicated by the Board, and assuring the proper installation of such improvements by or before an agreed date, which said 20% shall be held in escrow by the Township Treasurer, and deposited or invested in the manner prescribed by law for *291 municipal funds, the principal amount to be refunded to the subdivision owner or owners upon satisfactory completion of all such improvements and for release of said applicable Performance Bond, or sooner, in the sole discretion of the Township Committee."
By requiring the installation of utilities and their appurtenances, including water mains, gas, sanitary sewers and drainage, and the completed grading and constructed surfacing of the base course of the streets prior to final approval, plaintiffs assert that the ordinance is repugnant to the Municipal Planning Act (N.J.S.A. 40:55-1.1 et seq.) and places an unconscionable burden on the developer, creating certain practical as well as legal problems.
Apprehension is evinced over the degree of protection that a developer has during the interval between preliminary and final subdivision approval. Plaintiffs assert that even if they installed the enumerated utilities, they would not be adequately protected against subsequent changes in specifications and would be without adequate assurance that they would even receive final subdivision approval from the planning board. Amplifying their contention, they see a parallel between Levin v. Livingston Township, 35 N.J. 500 (1961), and the instant case. In Levin the question was whether a municipality might, after it had granted preliminary approval and the subdivider had commenced construction of the streets, amend its street ordinance to require paving with bituminous concrete instead of penetration macadam originally provided for on the tracts in which improvements were already being constructed. Justice Hall indicated that while preliminary approval by a municipal authority does not preclude subsequent amended street pavement specifications from being applicable, there does come a point in the approval process where the developer is protected against further changes of this nature, and that point is reached when final approval is granted.
As a practical matter, plaintiffs further assert, utility companies are reluctant to put in gas or water mains without final approval, and developers must pay "out of their pockets" *292 for these installations, or post a bond with the utility company.
The initial question is whether that part of the amendatory ordinance dealing with the installation of the enumerated utilities conflicts with the apposite section of the Municipal Planning Act (N.J.S.A. 40:55-1.21), which provides as follows:
"Before final approval of plats the governing body may require, in accordance with the standards adopted by ordinance, the installation, or the furnishing of a performance guarantee in lieu thereof, of any or all of the following improvements it may deem to be necessary or appropriate: street grading, pavement, gutters, curbs, sidewalks, street lighting, shade trees, surveyor's monuments, water mains, culverts, storm sewers, sanitary sewers or other means of sewage disposal, drainage structures, and such other subdivision improvements as the municipal governing body may find necessary in the public interest." (Emphasis supplied)
It is evident to the court from a comparison of the amendatory ordinance and the enabling statute that the ordinance is actually less restrictive than the statute. The municipality has the statutory authorization to require the complete installation of all the enumerated items in that statute, and can require "such other subdivision improvements as the municipal governing body may find necessary," prior to final approval.
Several other considerations also militate against plaintiffs' position. The problem of standards was very much in the forefront of Justice Hall's thinking when he indicated in Pennyton Homes, Inc. v. Planning Bd. of Borough of Stanhope, 41 N.J. 578, 585 (1964), that it is incumbent on a developer to protect himself against changes in "improvement requirements" during the interval between preliminary and final approval by obtaining final approval promptly and posting a performance bond "based on the ordinance requirements at that time." It is also particularly pertinent that the court stated:
*293 "From what we have said concerning the intended legislative scheme, it follows that any agreement between the municipal agency and the subdivider at the time and as part of tentative approval with respect to the improvements which will be required for final approval would not be binding or effective. All of this may well make advance ascertainment of a developer's complete costs uncertain, but the Legislature seems to have decided that he should not be entitled to such complete assurance for by another section of the statute, N.J.S.A. 40:55-1.23, he may not validly sell or agree to sell a lot prior to final approval and any advertisement or offer of proposed houses at a specific price before that event is at his peril." (at p. 585; emphasis supplied)
The court further feels that plaintiffs' apprehensions are basically unfounded. A municipality cannot arbitrarily change the conditions of subdivision approval, whether the work has been fully completed or merely covered by a surety bond absent some paramount or public necessity. United States Home & Development Corp. v. LaMura, 89 N.J. Super. 254, 262 (App. Div. 1965); see Pennyton Homes, Inc. v. Planning Bd. of Borough of Stanhope, supra, Levin v. Livingston Tp., supra.
The remaining challenge to the ordinance involves a question of statutory interpretation which has not been the subject of a dispositive holding. N.J.S.A. 40:55-1.22 of the Municipal Planning Act provides:
"The governing body may accept adequate performance guarantees for the purpose of assuring improvements, as provided in section twenty-one of this act and section ten of the official Map and Building Permit Act (1953).
The amount of any performance guarantee may be reduced by the governing body by resolution when portions of the improvements have been completed, and the time allowed for installation of the improvements for which the performance guarantee has been provided may be extended by said body by resolution.
If the required improvements shall not have been installed in accordance with the performance guarantee, the obligor and surety, if any, shall be liable thereon to the municipality for the reasonable cost of the improvements not installed and upon the receipt of the proceeds thereof the municipality shall install such improvements." (Emphasis supplied)
*294 The narrow issue is whether the words "performance guarantee" were intended by the Legislature to mean exclusively "surety bond." Plaintiffs assert that the Township of Lawrence has no statutory authorization to demand both a surety bond and a certain percentage of cash, which it would place in its general fund and hold without the payment of interest to the developer, to insure the completion of the remaining improvements.
Conversely, defendant points out that the statute says "performance guarantee" which is a more encompassing term than the words "performance bond" or "surety." It further indicates that the most important items, such as the required utility installations, the base course of all streets, and curbs and gutters, must be installed prior to final approval, and that no performance bond or cash deposit is necessary. Only on the remaining improvements must the developer post a performance bond in the amount of 80% and a cash deposit of 20% to be held in escrow.
It is settled law that there is a presumption in favor of the validity of an ordinance, and the burden is upon those who assail it. Bellington v. Township of East Windsor, 32 N.J. Super. 243 (App. Div. 1954); Auto-Rite Supply Co. v. Mayor, etc., Woodbridge Tp., 41 N.J. Super. 303 (Law Div. 1956); Town of West Orange v. Jordan, 52 N.J. Super. 533 (Law Div. 1958). The New Jersey Constitution, Art. IV, Sec. VII, par. 11, requires that questions of interpretation and construction be liberally construed in favor of municipal authority. See also, Professor Cunningham's comprehensive article, "Control of Land Use in New Jersey," 15 Rutgers L. Rev. 1 (1960).
In passing, the court is cognizant that the Municipal Planning Act (N.J.S.A. 40:55-1.1 to 1.42) is a reflection of a social and an economic philosophy designed to prevent community blight and deterioration. Prior to the passage of the Municipal Planning Act. many subdivisions were constructed without regard to the convenience and well-being of the community, leading one court to remark:
*295 "We are surrounded with the problems of planless growth. The baneful consequences of haphazard development are everywhere apparent. These are evils affecting the health, safety and prosperity of our citizens that are well-nigh insurmountable because of the prohibitive corrective cost. To challenge the power to give proper direction to community growth and development * * * is to deny the vitality of a principle that has brought men together in organized society for their mutual advantage." Mansfield and Swett Inc. v. Town of West Orange, 120 N.J.L. 145, 150, 151 (Sup. Ct. 1938).
It is felt that the Legislature intended the words "performance guarantees" in the Municipal Planning Act (N.J.S.A. 40:55-1.22) to mean a flexible type of security that a municipality might require in a given situation. In the public interest a municipality might decide that all of the enumerated items (N.J.S.A. 40:55-1.21) be installed prior to final approval, or in other circumstances might deem it advisable that some improvements be completed at a later date with the posting of an appropriate performance bond and/or a small percentage of cash. It is now common practice in real estate construction contracts to withhold a small percentage of cash until the builder has fulfilled the conditions of his contract. Finally, numerous decisions reiterate that "we presume courts should lean in favor of public interest." Pennyton Homes, Inc. v. Planning Board of Borough of Stanhope, supra, 41 N.J., at p. 586.
For the foregoing reasons the court finds that the amendatory ordinance of Lawrence Township is valid. An appropriate order may be submitted.