244 N.J. Super. 514 (1990)
582 A.2d 1276
TOLL BROS., INC., PLAINTIFF-RESPONDENT,
v.
THE TOWNSHIP OF GREENWICH, IN THE COUNTY OF WARREN, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, THE MAYOR AND THE TOWNSHIP COMMITTEE OF THE TOWNSHIP OF GREENWICH AND THE PLANNING BOARD OF THE TOWNSHIP OF GREENWICH, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 3, 1990.
Decided November 29, 1990.
*515 Before Judges GAULKIN, SHEBELL and SKILLMAN.
Edward J. Boccher argued the cause for appellants, Township of Greenwich and the Mayor and the Township Committee of the Township of Greenwich (Mudge, Rose, Guthrie, Alexander & Ferdon, attorneys, Michael J. Perrucci, of counsel and Matthew P. Regulski, on the brief).
Lyn Paul Aaroe argued the cause for appellant, Planning Board of the Township of Greenwich.
Thomas F. Carroll, III, argued the cause for respondent (Hill, Wallack & Masanoff, attorneys, Thomas F. Carroll and Melanie A. Hudak, on the brief).
The opinion of the court was delivered by SKILLMAN, J.A.D.
The issue presented by this appeal is whether the Municipal Land Use Law authorizes a municipality to adopt an ordinance which requires a developer to install site improvements before its application for final subdivision approval will be considered.
*516 Plaintiff Toll Bros., Inc. contracted to purchase approximately 100 acres of land in Greenwich Township, Warren County, contingent upon its receipt of final subdivision approval. Defendant Greenwich Planning Board (the Board) granted plaintiff's application for preliminary major subdivision approval, but conditioned its approval upon plaintiff constructing, subject to any exceptions allowed by the township engineer, "all improvements on the site including, but not limited to proposed roadways, stormwater management basins, structures and appurtenant facilities, utilities, curbs and sidewalks." This condition was based upon a Greenwich ordinance which requires a developer to install all improvements, except for sidewalks, the final pavement course of streets, monuments, street signs, shade trees and "any other improvements ... the planning board shall, in its discretion, deem to be appropriately the subject of a performance guarantee to insure later installation," before its application for final subdivision approval will be considered.
Plaintiff applied for a waiver of the requirement that it install site improvements before the Board would consider its application for final subdivision approval, which the Board denied. Plaintiff then filed a prerogative writ action against the Board, Greenwich Township and its Mayor and Township Committee, challenging the validity of the Greenwich ordinance. The trial court granted plaintiff's motion for summary judgment, concluding that the requirement that a developer install improvements before the Board will consider its application for final subdivision approval violates the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -129. Accordingly, the court entered final judgment invalidating the ordinance and requiring the Board to accept a performance guarantee for the improvements plaintiff is required to install.
The Mayor and Township Committee and the Board filed separate appeals from the judgment, which we consolidated on our own motion. After we denied the Board's motion for a stay pending appeal, it approved plaintiff's application for final *517 subdivision approval. Plaintiff then filed a motion to dismiss the appeal on the ground of mootness, which we denied.
The section of the MLUL governing a developer's obligation to provide for the installation of improvements is N.J.S.A. 40:55D-53(a)(1), which provides in pertinent part:
Before recording of final subdivision plats ... the approving authority may require and shall accept in accordance with the standards adopted by ordinance for the purpose of assuring the installation and maintenance of on-tract improvements:

(1) The furnishing of a performance guarantee in favor of the municipality in an amount not to exceed 120% of the cost of installation for improvements it may deem necessary or appropriate.... [emphasis added].
We interpret the underscored language of N.J.S.A. 40:55D-53(a)(1), providing that a municipal land use agency not only may require but "shall accept" the furnishing of a performance guarantee "for the purpose of assuring the installation ... of on-tract improvements," as a legislative directive that a municipality must accept a performance guarantee as a developer's assurance of the fulfillment of its obligation to construct the improvements required as a condition of subdivision approval. We reject the Board's view that N.J.S.A. 40:55D-53(a)(1) simply confers an option upon a municipality to allow developers to furnish performance guarantees for improvements, because this interpretation would effectively read the words "shall accept" out of the statute, contrary to the well established principle that "full effect should be given, if possible, to every word of a statute." Gabin v. Skyline Cabana Club, 54 N.J. 550, 555, 258 A.2d 6 (1969). We also consider it highly improbable that the Legislature intended to authorize a municipality to require a developer to install costly improvements before the developer had received final subdivision approval and thereby had been assured of the feasibility of proceeding with its entire project.
This interpretation of N.J.S.A. 40:55D-53(a)(1) is supported by a leading treatise in the land use field, which observes that:
If approval of a plat were in all cases delayed until the installation of required improvements, the development of land would be unnecessarily delayed, and the *518 process would involve financial risks which the developer might be unwilling to take. In addition, building permits could not be issued in most jurisdictions, and even the sale of lots in the plat might be held up pending completion of all improvements. This would impose a severe financial burden on the developer. Accordingly, the enabling acts usually provide for acceptance by the reviewing agency of the subdivider's undertaking to complete the improvements, secured by a deposit of cash, or a performance bond. 4 R. Anderson, American Law of Zoning § 23.46 at 159 (2d ed 1977).
The treatise then cites N.J.S.A. 40:55D-53 as an example of an enabling act which authorizes a developer to provide a performance guarantee for the completion of improvements.
Defendants rely upon N.J.S.A. 40:55D-38(c) which provides in pertinent part:
An ordinance requiring approval by the planning board of either subdivisions or site plans, or both, shall include ... provisions ensuring that [improvements] shall be completed either prior to or subsequent to final approval of the subdivision or site plan by allowing the posting of performance bonds by the developer.
Defendants interpret this section to confer authority upon a municipality to adopt an ordinance requiring developers to actually install improvements prior to final approval of the subdivision.
However, this interpretation of N.J.S.A. 40:55D-38(c) would conflict with the evident intent of N.J.S.A. 40:55D-53(a)(1), contrary to the firmly established principle that a statute should be read as a harmonious whole so as to avoid conflict between its individual sections. Loboda v. Clark Tp., 40 N.J. 424, 435, 193 A.2d 97 (1963). Furthermore, "[i]n general, when there is a conflict between general and specific provisions of a statute, the specific provisions will control." Wilson v. Unsatisfied Claim and Judgment Fund Bd., 109 N.J. 271, 278, 536 A.2d 752 (1988). Consequently, to whatever extent N.J.S.A. 40:55D-53(a)(1) and N.J.S.A. 40:55D-38(c) may appear to conflict, N.J.S.A. 40:55D-53(a)(1) should control because it deals more specifically and in greater detail than N.J.S.A. 40:55D-38(c) with a municipality's authority to regulate a developer's *519 completion of improvements.[1]
Moreover, N.J.S.A. 40:55D-38(c) is now readily susceptible to a narrower reading than the one urged by Greenwich, since it was amended in 1985 to provide that a subdivision ordinance shall include provisions ensuring that improvements shall be completed "by allowing the posting of performance bonds by the developer." Although there is no pertinent legislative history, the apparent intent of this amendment was to negate the interpretation of N.J.S.A. 40:55D-38(c) advanced by Greenwich on this appeal and to harmonize its language with N.J.S.A. 40:55D-53(a)(1). Cf. Savonick v. Lawrence Tp., 91 N.J. Super. 288, 292-93, 219 A.2d 902 (Law Div. 1966) (which construed the Municipal Planning Act of 1953, the predecessor to the MLUL, to allow a municipality to require a developer to install improvements before final subdivision approval would be granted.).
Our conclusion that a municipality may not compel a developer to complete improvements before consideration of its application for final subdivision approval draws further support from N.J.S.A. 40:55D-48(a), which states that "[t]he plat and any other engineering documents to be submitted shall be required in tentative form for discussion purposes for preliminary approval," and N.J.S.A. 40:55D-50(a), which states that "[t]he planning board shall grant final approval if the detailed drawings, specifications and estimates of the application for final approval conform to the standards established by ordinance for final approval [and] the conditions of preliminary approval...." The evident thrust of these provisions is that preliminary subdivision *520 approval may be obtained on the basis of tentative engineering plans which may be supplemented by more detailed plans submitted with an application for final subdivision approval. Cf. Pennyton Homes, Inc. v. Stanhope Planning Bd., 41 N.J. 578, 584, 197 A.2d 870 (1964) (noting that under the Municipal Planning Act of 1953, "the improvements to be required of the developer ... were not to be definitively determined as of the date of tentative approval"). The right of a developer to defer preparation of detailed drawings, specifications and estimates until submission of its application for final subdivision approval is inconsistent with Greenwich's position that a municipality may require completion of substantial improvements before its planning board will even consider an application for final approval.
We reject the Board's argument that the MLUL should be read to allow a municipality to require the completion of improvements prior to final subdivision approval in order to prevent developers from building and selling homes to innocent third parties without first completing essential improvements. A municipality has ample authority to prevent such conduct by imposing reasonable requirements for the timely installation of improvements before or during construction. A municipality's authority under N.J.S.A. 40:55D-38(c) to adopt "standards" for improvements and "provisions ensuring that such facilities shall be completed" includes authority to regulate the time of installation of improvements. This authority is confirmed by N.J.S.A. 40:55D-53(b), which provides that "[t]he time allowed for installation of the improvements for which the performance guarantee has been provided may be extended by the governing body by resolution." The authorization for a municipality to extend the time for completion of improvements assumes that a municipality is authorized initially to direct developers to complete improvements by a specified date. Therefore, while this appeal does not call upon us to decide the precise scope of a municipality's authority to require a developer to install specific improvements before or during construction, we are satisfied *521 that this municipal authority is activated only when a developer actually undertakes to develop a subdivision.
Affirmed.
NOTES
[1] Thus, subsection (a)(1) of N.J.S.A. 40:55D-53 authorizes a municipality to require a performance guarantee in an amount not to exceed 120% of the cost of installation of improvements; subsection (c) allows a municipality to increase the amount of a performance guarantee to account for increases in the anticipated costs of improvements, as a condition of extending the time for their completion; subsections (d) and (e) provide for municipal approval of improvements and the release from liability of the guarantor of the developer's obligations; and subsection (f) provides for the completion of improvements by the guarantor in the event of default by the developer.