820 A.2d 1220 (2003)
176 N.J. 125
D.L. REAL ESTATE HOLDINGS, L.L.C., a Limited Liability Company of the State of New Jersey, Plaintiff-Respondent,
v.
POINT PLEASANT BEACH PLANNING BOARD and the Borough of Point Pleasant Beach, a municipal corporation of the State of New Jersey, Defendants-Appellants.
Supreme Court of New Jersey.
Argued February 4, 2003.
Decided April 28, 2003.
*1221 John J. Jackson, III argued the cause for appellant Point Pleasant Beach Planning Board (King, Kitrick, Jackson & Troncone, Brick, attorneys).
Michael J. McKenna argued the cause for appellant Borough of Point Pleasant Beach (Hiering, Gannon and McKenna, Toms River, attorneys).
Steven A. Pardes argued the cause for respondent (Sinn, Fitzsimmons, Cantoli, West & Pardes, attorneys; Dennis J. Cantoli, Point Pleasant Beach, on the letter in lieu of brief).
Stephen M. Eisdorfer submitted a brief on behalf of amicus curiae, New Jersey Builders Association (Hill Wallack, attorneys; Mr. Eisdorfer and Henry T. Chou, Princeton, on the brief).
The opinion of the Court was delivered by LaVECCHIA, J.
This appeal involves interpretation of the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -129. The question is whether the MLUL authorizes a municipality to adopt a zoning ordinance that requires an applicant to seek final subdivision approval within three years of the grant of preliminary approval and any extension thereof. We conclude that adoption of such an ordinance is a valid exercise of municipal authority, consistent with the MLUL and, therefore, reverse the contrary conclusion of the Appellate Division below.

I.
In September, 1994, the Point Pleasant Beach Planning Board (Planning Board) granted an application for Preliminary Major Subdivision Approval and Bulk Variances involving the creation of fourteen single-family lots on property located at Block 179.02, lots 10, 11, and 12 in the *1222 Borough of Point Pleasant Beach (Borough). The effect of that approval was set forth in Borough Ordinance 19-14.5c:
Preliminary approval shall confer upon the applicant the following rights for a three-year period from the date of the preliminary approval:
1. That the general terms and conditions on which preliminary approval was granted shall not be changed, including but not limited to, use requirements; layout and design standards for streets, curbs and sidewalks; lot size; yard dimensions; and off-tract improvements; and
2. That the applicant may submit for final approval, on or before the expiration date of preliminary approval, the whole or a section or sections of the preliminary subdivision; and
3. That the applicant may apply for and the board may grant extensions on such preliminary approval for additional periods of at least one year, but not to exceed a total extension of two years, provided that if the design standards have been revised by ordinance, such revised standards may govern.
A corresponding section of the ordinance concerning final approvals required submission of a final plat for all major subdivision and development proposals requiring site plan review within three years after the date of the grant of preliminary approval, or its extension. Borough of Point Pleasant Beach, N.J., Ordinances § 19-14.7a ("Ordinance"). Receipt of final approval conferred on an applicant, for two years, certain rights, including that "the zoning requirements applicable to the preliminary approval first granted and all other rights conferred upon the developer, whether conditionally or otherwise, shall not be changed," and that "if the standards prescribed for final approval" were met, the developer could apply for three extensions of one year. Ordinance 19-14.7c.
During the three-year period following the grant of preliminary approval, the owner of the property in issue did not submit either a final plat or an application for an extension of preliminary approval. Four years after the grant of preliminary approval, D.L. Real Estate Holdings, LLC ("D.L.") acquired the property. About a year later, on October 18, 1999, D.L. applied for final major subdivision approval. The Planning Board denied the application based on Ordinance 19-14.7a, noting in its Resolution that it was not reaching the question whether there was compliance with the substantive requirements of the preliminary subdivision approval. D.L. thereupon filed this action in lieu of prerogative writs against the Planning Board and Borough, contending that Ordinance 19-14.7a was invalid because the MLUL does not authorize a municipality to limit the grant of a preliminary subdivision approval to three years.
Following the filing of cross motions for summary judgment by the parties, the trial court upheld the ordinance and dismissed the complaint. The court determined that the ordinance was not inconsistent with the MLUL, and that it furthered the salutary public policy of protecting the municipality from the revival of dormant applications. On appeal, the Appellate Division reversed in an unpublished opinion. The Appellate Division held that a municipality may not impose an expiration date on the grant of preliminary subdivision approval. Referencing this Court's discussion of preliminary approvals in Palatine I v. Planning Board of Township of Montville, 133 N.J. 546, 553, 628 A.2d 321 (1993), the Appellate Division stated that the MLUL does not limit the life of preliminary subdivision approval and, therefore, an ordinance *1223 imposing a time period for final approval submission would "run afoul" of the MLUL.
We granted certification, 174 N.J. 193, 803 A.2d 1164 (2002), and now reverse.

II.
Enacted in 1975, the MLUL is the modern legislative delegation of zoning authority to municipalities. L. 1975, c. 291. It authorizes a municipality to enact a master plan containing a land use element and to adopt zoning ordinances in furtherance of its plan. See William Cox, New Jersey Zoning and Land Use Administration § 1-1 (2001) ("Cox, New Jersey Zoning"). The MLUL specifically allows municipalities to enact ordinances that require planning-board approval for major subdivisions, N.J.S.A. 40:55D-48a, and, also, to require site-plan review and approval. N.J.S.A. 40:55D-41. If a municipality does enact such procedures, the enabling ordinance must include provisions addressing certain topics. N.J.S.A. 40:55D-38. One is that the ordinance set forth "provisions for the submission and processing" of applications for approval. N.J.S.A. 40:55D-38a. The MLUL does not limit the permissible scope of municipal authority concerning application submission requirements or processing other than that the ordinance's provision be "not inconsistent with other provisions" of the MLUL. Ibid. Other mandated provisions relate to substantive design standards for approval of a plan. N.J.S.A. 40:55D-38b(1)-(13) (requiring ordinance to ensure that plan conforms with other design requirements, such as, for example, street width and grade, water supply, drainage, shade trees, and soil erosion). The municipal ordinance also must include provisions relating to natural resources, traffic flow, landscaping and location of structures, exterior lighting, energy conservation, and recycling. N.J.S.A. 40:55D-41. See also N.J.S.A. 40:55D-39 (identifying additional discretionary provisions beyond review of tract's use, including regulation of off-tract improvements, protections to ensure completion of long-term development, and requiring proof of paid-up taxes).
As an encouragement to prompt consideration of applications, the MLUL authorizes automatic preliminary subdivision approval if a municipality does not act to grant or deny an application within the applicable mandatory time period, provided the proposed plan complies with both the municipal ordinance and the MLUL. N.J.S.A. 40:55D-48b and c. Nonetheless, some review is anticipated because even though a municipality's preliminary review likely is based on a plat and engineering documents submitted in tentative form, terms and conditions may attach to a preliminary approval and their satisfaction will be required for final approval. See N.J.S.A. 40:55D-48a. See also Toll Bros., Inc. v. Township of Greenwich, 244 N.J.Super. 514, 519-20, 582 A.2d 1276 (App.Div.1990) (noting that in order to obtain final approval, applicant may be required to provide more detailed engineering and plat submissions to demonstrate fulfillment of all conditions imposed by preliminary approval).
Importantly, under the MLUL preliminary approval confers on the developer the following rights for three years:
a. That the general terms and conditions on which preliminary approval was granted shall not be changed ... except that nothing herein shall be construed to prevent the municipality from modifying by ordinance such general terms and conditions of preliminary approval as relate to public health and safety;
b. That the applicant may submit for final approval on or before the expiration date of preliminary approval the *1224 whole or a section or sections of the preliminary subdivision plat or site plan, as the case may be; and
c. That the applicant may apply for and the planning board may grant extensions on such preliminary approval for additional periods of at least 1 year but not to exceed a total extension of 2 years, provided that if the design standards have been revised by ordinance, such revised standards may govern.

[N.J.S.A. 40:55D-49.]

III.
The Borough, by ordinance, has set forth requirements for the submission and processing of applications. The ordinance is clear: no application for final approval will be accepted unless it is submitted within three years (plus extensions) of the grant of preliminary approval to a site plan or major subdivision. The question here is whether the municipality can enact such an ordinance. The resolution of that issue requires a determination whether the Borough's ordinance, enacted pursuant to its express power under N.J.S.A. 40:55D-38a, is inconsistent with the MLUL or tramples any right accorded thereunder to a developer who obtains a preliminary approval. If the ordinance does not have that effect, it is a lawful exercise of governmental authority.
Although municipal authority to regulate land use is limited to the extent the Legislature delegates such authority through the MLUL, Pizzo Mantin Group v. Township of Randolph, 137 N.J. 216, 223, 645 A.2d 89 (1994), the Constitution provides that that delegation of authority is to be "liberally construed" in a municipality's favor. N.J. Const. art. IV, § 7, ¶ 11. Our statutory analysis is informed by the constitutional direction that we give liberal construction to municipal powers expressly conferred by the Legislature, as well as to those "of necessary or fair implication, or incident to the powers expressly conferred, or essential thereto, and not inconsistent with or prohibited by [the] Constitution or by law." Ibid. Indeed, other municipal powers concerning zoning authority have been fairly inferred from the MLUL, or its predecessor, absent the statute's express mention of the power. In Divan Builders, Inc. v. Planning Board of the Township of Wayne, 66 N.J. 582, 595, 334 A.2d 30 (1975), we upheld a zoning ordinance requiring off-site improvements as a condition of subdivision approval notwithstanding that the municipal planning statute in effect at the time made no specific reference to off-site improvements in the context of subdivision approval. Recognizing our obligation to construe liberally statutes concerning municipalities, we concluded that the challenged ordinance comported with the overall legislative purpose of imposing on the developer the costs of municipal improvements required by the developer's construction. Ibid. Ordinances that impose a time limit on the validity of a variance also have been upheld notwithstanding that the MLUL does not grant expressly that authority. See Ramsey Assocs., Inc. v. Bd. of Adjustment of the Borough of Bernardsville, 119 N.J.Super. 131, 133, 290 A.2d 448 (App.Div.1972) ("[i]t is not unreasonable or improper to require a new application for a building permit or variance to be filed if construction pursuant to the permit or variance theretofore granted is not begun within the time limited by the ordinance").
Notwithstanding that the MLUL does not affirmatively state that a municipality may, by ordinance, set an expiration date for a preliminary approval, we find Ordinance 19-14.5c to be well within the Borough's express and fairly implied delegated authority. As can be seen by a juxtaposition of the two, the ordinance *1225 fairly mirrors the text of N.J.S.A. 40:55D-49, insofar as the ordinance details the rights conferred on a developer on the grant of preliminary approval. The text departs from the statute only in that the ordinance affirmatively states that a developer cannot apply for final approval based on the granted terms and conditions of a preliminary approval if a final application is not submitted within three years of the grant of preliminary approval, unless extended. N.J.S.A. 40:55D-49b only confers the "right" to apply for final approval based on the terms and conditions of preliminary approval for a period of three years, unless extended. Subsection b expressly refers to the concept of an "expiration date" for preliminary approval, which obviously cannot be less than the three years plus extensions that section fortynine expressly authorizes. Although we need not decide the question, it is arguable that by using the term "expiration date" in N.J.S.A. 40:55D-49b the Legislature may well have intended that preliminary approval have a specific time period that "expires" upon the conclusion of the three years plus the two one-year extensions. See also N.J.S.A. 40:55D-52 (stating that "the granting of final approval terminates the time period of preliminary approval....").
We do not perceive the Borough ordinance to be inconsistent with the MLUL. The ordinance makes clear that an application for final approval will not be accepted beyond the protected time period for submission mandated in the statute and, therefore, does not impinge on any right conferred by statute. In setting out its process and requirements for final approval, the Borough simply declines to give a developer further rights than those expressly conferred under N.J.S.A. 40:55D-49. Under the ordinance, as in the MLUL, the developer is informed that one of the rights attendant to the grant of preliminary approval is the right to apply for final approval within three years, as extended. No equivalent guarantee is made in the MLUL for any period exceeding three years (plus the possible two oneyear extensions). Stated differently, the MLUL does not confer on preliminary approval a "right" to perpetual life absent an adverse zoning change, thereby preventing a municipality from setting a time limit for final approval submission. The exercise of municipal authority here plainly is not inconsistent with the MLUL when it tracks the same protections expressly afforded to a developer under the statute's conferral of rights. Nothing in the MLUL requires a municipality to go further. The Borough's determination not to is certainly a power fairly inferred from the statutory scheme.
The Appellate Division based its contrary determination on dicta in an earlier decision of our Court. In Palatine I v. Planning Board of the Township of Montville, 133 N.J. 546, 628 A.2d 321 (1993), we discussed the nature of preliminary site-plan approval under the MLUL and stated that
[t]he approval itself is valid indefinitely, but its effect of insulating the holder from changes in the zoning laws is limited to the specific term of years. If the applicable zoning laws have not changed, the holder of preliminary approval may continue past the five-year period without obtaining further approvals. However, if the zoning laws have changed, then after the five-year period of protection has elapsed, the municipality may enforce those new regulations against the holder of preliminary approval.
[Id. at 554, 628 A.2d 321 (citing Cox, New Jersey Zoning § 15-5.2).]
Palatine I involved a municipality whose ordinance permitted the issuance of building permits to the holder of preliminary *1226 site plan approval. 133 N.J. at 553, 628 A.2d 321. In that setting we held that a builder may continue to build based on the permits issued pursuant to the grant of preliminary approval notwithstanding that the last period of protection from zoning changes had elapsed, so long as the project was not rendered impermissible as a result of any zoning ordinance changes. Id. at 553-54, 628 A.2d 321. The broad language employed in our discussion in Palatine I concerning preliminary approval has supported an interpretation of the MLUL that grants greater rights to a developer than those conferred by the statute and has led to the argument now advanced by D.L. in this appeal, namely, that a municipality may not require a developer to submit for final approval within the statutory time period of protection for preliminary approval. We reject that argument and to the extent that Palatine I supports a contrary conclusion, we disapprove its language. We note that in his treatise on zoning law, Cox has interpreted Palatine's holding more narrowly, emphasizing its unique facts:
[I]n those municipalities which by ordinance permit the holder of a preliminary site plan approval to obtain building permits, even after the last period of extension has elapsed, the preliminary approval itself may not lapse. What has ended is the developer's protection from the non-safety-related ordinance changes. The developer may still build in accordance with the approval unless and until the project has become impermissible in some regard because of zoning law change. See Palatine I v. Planning Bd., 133 N.J. 546, 553-554, 628 A.2d 321 (1993).
* * *
In those municipalities that require final approval prior to issuance of building permits, however, failure to obtain final approval within three years after obtaining preliminary approval, or within the period of any valid extensions approved by the board thereafter, would result in the lapse of the preliminary approval and, therefore, the inability of the developer to obtain a final approval because an application for same was not submitted within the time (three years plus periods of valid extensions) required by the statute.

[Cox, New Jersey Zoning § 15-5.1.]
We conclude that a municipality does have the authority, by fair implication from the MLUL, to state affirmatively that an application for final approval must be sought within three years of the grant of preliminary approval, and any extensions granted beyond that initial period. The municipality's power to set, in this manner, the terms under which final approval must be sought is a matter of fair implication under the statutory scheme and its exercise does not truncate any of the rights expressly conferred by N.J.S.A. 40:55D-49.
The MLUL encourages "municipal action to guide the appropriate use or development of all lands in this State, in a manner which will promote the public health, safety, morals, and general welfare." N.J.S.A. 40:55D-2a. This Court has recognized that the legislative desire to give municipalities the ability to plan effectively was a fundamental goal of the MLUL. Kaufmann v. Planning Bd. for the Township of Warren, 110 N.J. 551, 557, 542 A.2d 457 (1988). Moreover, in Hilton Acres v. Klein, 35 N.J. 570, 174 A.2d 465 (1961), we held invalid a municipal grant of protection from zoning change that extended beyond the statutory period. In so doing, we commented on the purpose of granting a maximum number of years of protection from zoning changes to a grant of preliminary approval:

*1227 The Legislature could not have intended conditions imposed at inception to be considered as frozen indefinitely. Municipal authorities may well decide, by reason of experience, population growth or for any number of other valid reasons, that [preliminary approval] requirements should be upgraded....[t]he Legislature certainly appreciated the importance of such possibilities and so must be said to have specified the three-year protective period for the developer's benefit as an outside limit.

[Id. at 580-81, 174 A.2d 465.]
Here, the Borough's ordinance encourages developer action on a preliminary approval within the three-year or extended five-year period. The time frame advances the public interest in prompt development of land in a manner consistent with the grant of preliminary approval, and through any permitted extensions of that period of approval, including mandated extensions. See N.J.S.A. 40:55D-49f. And, it furthers the municipality's ability to plan effectively. It prevents the possibility that a future tentative "potential" development, based on an earlier preliminary subdivision approval, would forever affect planning decisions concerning development in other areas. In those municipalities that, as here, do not issue building permits on the basis of preliminary approval, the developer's commitment to a development may not be evident until the application for final approval is advanced. The ordinance reduces that uncertainty.

IV.
The judgment of the Appellate Division is reversed.
Chief Justice PORITZ and Justices COLEMAN, and ZAZZALI join in Justice LaVECCHIA's opinion. Justice VERNIERO filed a separate dissenting opinion in which Justices LONG and ALBIN join.
VERNIERO, J., dissenting.
The Court holds that the Borough of Point Pleasant Beach (Borough) is authorized to limit the life of a preliminary major subdivision approval under the Municipal Land Use Law, N.J.S.A. 40:55D-1 to -129 (MLUL). My disagreement with that holding is anchored in the premise that the Legislature designed the MLUL "to require consistency, uniformity, and predictability in the subdivision-approval process." Pizzo Mantin Group v. Township of Randolph, 137 N.J. 216, 229, 645 A.2d 89 (1994). In my view the better reading of the statute is that in the absence of an explicit statutory grant of authority, municipalities cannot limit an applicant's preliminary subdivision approval in the manner sought here.
The Court addressed a related question concerning the duration of preliminary site plan approval in Palatine I v. Planning Board of Township of Montville, 133 N.J. 546, 553, 628 A.2d 321 (1993). We concluded that "the preliminary approval does not automatically expire, but the statutory period of protection from adverse changes in zoning regulation does expire." Ibid. The statute treats site plan and subdivision approvals in a similar fashion. The Appellate Division has explained:
These approvals do not `lapse' as that term is ordinarily understood, although there has existed a widespread understanding that such approvals do expire. William M. Cox, N.J. Zoning and Land Use Administration, § 15-5.2 at 255 (1994). In 1993 the Supreme Court clarified [in Palatine I] that the approvals are valid indefinitely, but expire in the sense that after the period of statutory protection they are not immune *1228 from newly-adopted land use requirements.
[MCG Assocs. v. DEP, 278 N.J.Super. 108, 127, 650 A.2d 797 (1994).]
There is a difference, of course, between whether the MLUL requires expiration of approvals (it does not) and whether it permits municipalities to establish such expiration dates (the question in this appeal). Because the MLUL is silent, its overriding purpose guides my analysis. See New Jersey Builders, Owners and Managers Ass'n v. Blair, 60 N.J. 330, 338, 288 A.2d 855 (1972) (instructing that when construing statute, courts must seek to effectuate "fundamental purpose for which the legislation was enacted"). That purpose, statewide uniformity of regulation, is better achieved by not permitting a municipality to establish its own expiration timetable in these circumstances. Invalidating an existing application based solely on a locally imposed expiration date is a significant act that should be enforced only if the statute expressly authorizes it. See Taxpayers Ass'n of Weymouth Township v. Weymouth Township, 80 N.J. 6, 20, 364 A.2d 1016 (1976) (declaring that "municipalities have no power to zone except as delegated to them by the Legislature"), cert. denied sub nom., 430 U.S. 977, 97 S.Ct. 1672, 52 L.Ed.2d 373 (1977).
The so-called statutory period of protection refers to N.J.S.A. 40:55D-49, which is intended as a safe harbor for applicants. The provision immunizes a developer for three years (with possible extensions) from adverse zoning amendments passed subsequent to a municipality's approval of a preliminary subdivision or site plan application. Ibid. It addresses the Borough's valid concern that revival of a "dormant" application with unlimited life can harm a municipality whose land-use characteristics have changed since the project's initial approval date. In that circumstance, a municipality can amend its zoning ordinances to respond to its changed planning needs. Once an application falls outside the statutory period of protection, those amendments would have the same practical effect as a project expiration date. The builder would have to comply with the new requirements or risk rejection of the application's final approval. Palatine I, supra, 133 N.J. at 554, 628 A.2d 321; MCG, supra, 278 N.J.Super. at 127, 650 A.2d 797.
Revising an ordinance or zoning rule obviously requires some effort. I disagree with the notion, however, that the amendatory process is too burdensome or might fall short of addressing a municipality's legitimate needs. The MLUL envisions that very process. The statute expressly prohibits imposition of changes in use requirements, layout and design standards for streets, curbs and sidewalks, lot size, yard dimensions and off-tract improvements during the three-year period of protection. N.J.S.A. 40:55D-49. Importantly, a municipality is authorized to enforce those changes once the period of protection has expired, thus enabling it to regulate significantly even a previously approved project.
The MLUL also provides in the same provision that "the applicant may submit for final approval on or before the expiration date of preliminary approval the whole or a section or sections of the preliminary subdivision plat or site plan, as the case may be[.]" N.J.S.A. 40:55D-49 (emphasis added). I am not persuaded by the Borough's argument that the statute's highlighted language contemplates that a municipality may set an expiration date on its prior approvals. Instead, I construe the term "expiration date" to mean the expiration of the period of statutory protection, which is the central object of the provision within which the term appears.
*1229 I submit that the Appellate Division relied on Palatine I as it did because Palatine I's analytical framework is at odds with the ordinance before us. Although Palatine I does not forbid directly the regulation at issue here, the logical inference from that decision, and indeed from the MLUL itself, strongly suggests that the ordinance is invalid. That is because if the Legislature had intended to empower municipalities as the Borough contends, then it would have structured the MLUL's safe-harbor provision quite differently. The statute simply would authorize a municipality to extinguish an application no earlier than three years after its initial approval, provided that it imposed no new requirements on the applicant during the interim three-year period.
Moreover, plaintiff contends, and the Borough does not dispute, that "there have been no changes in the zoning ordinances of the Borough for the almost six years that have passed between preliminary approval and the filing of the application for final major subdivision approval." The import of that observation is twofold. First, when a municipality makes no changes to its zoning rules we can presume that it is satisfied with development in a given area. Second, when there has been no need for regulatory changes and the municipality nonetheless seeks to rescind its prior approval for no reason other than its deadline has passed, that action takes on an air of arbitrariness that is prohibited under the MLUL.
At bottom, the MLUL embodies a careful bargain between developers and municipalities. Developers receive the safe-harbor protections found in N.J.S.A. 40:55D-49 and, in exchange, municipalities retain considerable leeway in being able to amend their zoning requirements and to enforce those amendments once the safe-harbor period has elapsed. Today's decision alters that balance by recognizing the power of municipalities to establish expiration dates for preliminary approvals, although the MLUL contains no such explicit authority. In contrast, my reading of the statute would encourage municipalities to update their zoning regulations if they harbor true concerns that existing "dormant" applications are inconsistent with contemporary planning needs. That, in turn, would have the salutary effect of adding greater transparency to the process.
In sum, municipalities now may impose individual expiration dates on development projects as they deem fit, subject only to the limitations found under N.J.S.A. 40:55D-49. Such balkanization of the zoning power likely will lead to increased costs and uncertainty as applicants attempt to comply with idiosyncratic deadlines in an untold number of municipalities. Put simply, requiring an applicant to submit to a second approval process merely because an artificial deadline has passed will add expense and cause delay to the process, with little or no benefit from a planning perspective. That result is inconsistent with the MLUL's central purpose and, therefore, should be prohibited.
Accordingly, I respectfully dissent. I would affirm the judgment of the Appellate Division in all respects.
For reversalChief Justice PORITZ, and Justices COLEMAN, LaVECCHIA and ZAZZALI4.
For affirmanceJustices LONG, VERNIERO, and ALBIN3.