824 A.2d 1114

R.J.P. BUILDERS, INC., PLAINTIFF–APPELLANT, v. TOWNSHIP OF WOOLWICH, WOOLWICH TOWNSHIP COMMITTEE, AND WOOLWICH TOWNSHIP PLANNING BOARD, DEFENDANTS RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued October 8, 2002—Decided June 13, 2003.

Before Judges SKILLMAN, CUFF and WINKELSTEIN.

*Ronald J. Uzdavinis,* argued the cause for appellant (*Holston, MacDonald, Uzdavinis & Ziegler,* attorneys; *Mr. Uzdavinis,* on the brief).

*Herbert H. Butler,* argued the cause for respondents (*Butler, Butler, Rosenberger & Horner,* attorneys; *Mr. Butler,* on the brief).

*Stickel, Koenig & Sullivan,* attorneys for *amicus curiae* New Jersey State League of Municipalities (*Stuart R. Koenig,* on the brief).

*Flaster/Greenberg,* attorneys for *amicus curiae* Builders League of South Jersey (*Robert M. Washburn,* of counsel and on the brief; *Sharon A. Morgenroth,* on the brief).

The opinion of the court was delivered by

SKILLMAN, P.J.A.D.

On March 15, 2001, defendant Woolwich Township Planning Board (Board) granted final major subdivision approval to plaintiff R.J.P. Builders, Inc. (Builders) for a development project called "The Links." This approval was subject to a number of conditions, including the two conditions challenged in this appeal:

1. That the applicant complete construction and installation of the improvements required for the subdivision reflected in the cost estimate for bonding, ... to the

satisfaction of the Woolwich Township Engineer within 18 months from the date of adoption of this resolution.

. . .

3. That the applicant post with the township a maintenance guarantee securing maintenance of all improvements to be constructed in the subdivision ... in the amount of $62,561.88. The maintenance guarantee shall run for a term of two years from the date of acceptance of the improvements by the township.

The resolution also provided that Builders' subdivision plat would not be signed and filed with the county clerk until various conditions, including the condition three requirement of a maintenance guarantee, had been satisfied.

Builders brought this action in lieu of prerogative writs challenging conditions one and three. Builders' complaint named both the Board and the Township Committee of Woolwich as defendants.[1] The case was brought before the trial court on cross-motions for summary judgment. The court concluded in an oral opinion that both conditions were valid and entered judgment in the defendants' favor.

Builders appeals. We granted leave to file amicus curiae briefs to the Builders League of South Jersey, which supports Builders' position, and the New Jersey State League of Municipalities, which supports the Board's position.

We conclude that condition three, which requires Builders to provide a maintenance guarantee before filing of its subdivision plat, is valid. However, condition one, which requires Builders to complete all improvements within eighteen months of the resolution granting final subdivision approval, is invalid.

---

[1] The condition three requirement that a developer provide a maintenance guarantee before the subdivision plat may be signed and filed with the county clerk is apparently based on an ordinance. Although the ordinance included in plaintiff's appendix relates only to site plan approval, defendants' brief indicates that an unspecified Woolwich Township ordinance "requires maintenance bonds to be posted in advance of plat signature." Builders does not dispute the existence of this ordinance. Therefore, we assume for purpose of this opinion that the Township Committee has adopted an ordinance providing the requisite authorization for condition three.

I

The Municipal Land Use Law (MLUL), *N.J.S.A.* 40:55D–1 to –136, authorizes municipalities to obtain two types of guarantees from developers: performance and maintenance guarantees. *N.J.S.A.* 40:55D–53(a). The purpose of a performance guarantee is to ensure that there are sufficient funds to complete all the necessary improvements. William M. Cox & Donald M. Ross, *New Jersey Zoning and Land Use Administration* § 24–7 at 533 (2003). The purpose of a maintenance guarantee is to insure the completed improvements. *Ibid.* A maintenance guarantee may be in the form of a surety bond or cash, *N.J.S.A.* 40:55D–5, or an irrevocable letter of credit issued by a banking or savings institution authorized to do and doing business in this State, *N.J.S.A.* 40:55D–53.5.

The determination whether a municipality can require a developer to post a maintenance guarantee before recording its subdivision plat turns on the interpretation of *N.J.S.A.* 40:55D–53(a), which provides in pertinent part:

> Before recording of final subdivision plats or as a condition of final site plan approval or as a condition to the issuance of a zoning permit pursuant to [*N.J.S.A.* 40:55D–65(d)], the approving authority may require and shall accept in accordance with the standards adopted by ordinance and regulations ... for the purpose of assuring the installation and maintenance of on-tract improvements:
>
> (1) The furnishing of a performance guarantee in favor of the municipality in an amount not to exceed 120% of the cost of installation ... for improvements which the approving authority may deem necessary or appropriate....
>
> (2) Provision for a maintenance guarantee to be posted with the governing body for a period not to exceed 2 years after final acceptance of the improvement, in an amount not to exceed 15% of the cost of the improvement....

Builders relies upon the difference in language between subsections (1) and (2) of *N.J.S.A.* 40:55D–53(a) in arguing that a municipality may not require a developer to provide a maintenance guarantee until final acceptance of its improvements. Builders points out that while subsection (1) requires "[t]he furnishing of" a performance guarantee, subsection (2) requires a developer to make "[p]rovision for" a maintenance guarantee, which is "to be posted" for a period not to exceed two years "after final accep-

tance" of the improvements. Based on this difference in language, Builders argues that subsection (2) only requires a maintenance guarantee "to be posted" after final acceptance of the improvements.

Defendants rely primarily upon the introductory language of *N.J.S.A.* 40:55D–53(a)—"Before recording of final subdivision plats or as a condition of final site plan approval"—to support its argument that a municipality may require a maintenance guarantee to be provided before final subdivision approval becomes effective. Defendants contend that use of the future tense, "to be posted," in subsection (2) refers solely to the period during which the maintenance guarantee must be in effect.

Both parties and the amicus supporting their positions also present policy arguments in support of their interpretations of *N.J.S.A.* 40:55D–53(a)(2). Builders contends that requiring a developer to provide a maintenance guarantee before recording its subdivision plat imposes an unfair financial burden because the developer will be forced to pay premiums for a maintenance bond both during the period it is constructing improvements and for an additional two-year period after the municipality accepts the improvements. Defendants argue that requiring a maintenance guarantee to be provided before a subdivision plat will be recorded provides assurance that the municipality will have the benefit of the guarantee even if a developer becomes insolvent after selling all the lots in its subdivision.

We conclude that the introductory language of *N.J.S.A.* 40:55D–53(a) is controlling and that the requirement that a developer provide a maintenance guarantee before recording its subdivision plat is valid. This introductory language states: *"Before recording of final subdivision plats* ... the approving authority may require ... for the purpose of assuring the installation and maintenance of on-tract improvements" the performance and maintenance guarantees described in subsections (1) and (2). (Emphasis added.) Thus, this introductory provision indicates that both performance and maintenance guarantees may be re-

quired before a subdivision plat is recorded. The fact that subsection (1) is phrased in terms of "furnishing" a performance bond while subsection (2) is phrased in terms of "provision for" a maintenance guarantee does not undercut this conclusion, because "furnish" and "provide" are often used as synonyms. See *Webster's II New College Dictionary* 891 (1999). Moreover, the fact that subsection (2) uses the future tense, "to be posted," in describing the developer's obligation to provide for a maintenance guarantee, cannot reasonably be read to negate the evident intent of the introductory language of *N.J.S.A.* 40:55D–53(a) authorizing a municipality to require both performance and maintenance guarantees before a subdivision plat will be recorded. The obligation of subsection (2) to provide a maintenance guarantee is a future obligation only in the sense that the guarantee does not become effective until "final acceptance of the improvement." Although the term of a maintenance guarantee does not begin until the improvements are accepted, this does not mean that a developer may postpone providing the guarantee until the time it goes into effect.

We do not foreclose the possibility that a developer could satisfy the maintenance guarantee requirement of subsection (2) by submission of an irrevocable commitment to post a maintenance bond or other guarantee for the required period upon final acceptance of the improvements. However, there is no indication any surety would issue such a commitment or, if it would, that the charge for this future obligation would be any less than the premium for a maintenance bond. In any event, Builders' sole argument is that subsection (2) does not authorize a municipality to require submission of any form of maintenance guarantee as a condition of final approval of a major subdivision, not that it should be allowed to satisfy this requirement by a different form of document than Woolwich requires.

Our conclusion that *N.J.S.A.* 40:55D–53(a) authorizes a municipality to require a developer to provide both performance and maintenance guarantees before a subdivision plat may be recorded

is supported by *N.J.S.A.* 40:55D–54(b), which provides in pertinent part:

> No subdivision plat shall be accepted for filing by the county recording officer until it has been approved by the planning board as indicated on the instrument by the signature of the chairman and secretary of the planning board.... The signatures of the chairman and secretary of the planning board shall not be affixed until the developer has posted the guarantees required pursuant to [*N.J.S.A.* 40:55D–53.]

The use of the plural "guarantees" in the last sentence of *N.J.S.A.* 40:55D–54(b) reinforces our conclusion that a municipality may require a developer to provide both the performance guarantee required by subsection (1) of *N.J.S.A.* 40:55D–53(a) and the maintenance guarantee required by subsection (2) before a subdivision plat will be approved and filed. Although we recognize that a municipality may require a developer to provide multiple performance guarantees in some circumstances, there is no reason to construe the plural "guarantees" in *N.J.S.A.* 40:55D–54(b) to refer solely to that possibility. If the Legislature had intended to require a developer to provide only performance guarantees before filing a subdivision plat, this intent could have been easily expressed by stating that a subdivision plat could not be approved until a developer "posted the guarantees required pursuant to [*N.J.S.A.* 40:55D–53(a)(1)]." Instead, *N.J.S.A.* 40:55D–54(b) states that a developer must post the guarantees "required pursuant to [*N.J.S.A.* 40:55D–53]," which encompasses both the performance guarantee required by subsection (a)(1) and the maintenance guarantee required by subsection (a)(2).

In support of its argument that a developer is not required to provide a maintenance guarantee before filing a subdivision plat, Builders relies upon a letter obtained from the "Chief of Legislative Analysis" in the Department of Community Affairs, which states in pertinent part:

> The forms that this Department has adopted by rule at N.J.A.C. 5:39 clearly state that the performance bond is to be in effect until the improvements are approved or accepted and that the maintenance bond only becomes effective upon approval or acceptance. The premise here is that the maintenance bond follows the performance bond, not that they are in effect at the same time. This is consistent with the language of N.J.S.A. 40:55D–53, which provides for the *furnish-*

*ing* of a performance guarantee prior to recording of final subdivision plats or as a condition of the issuance of final site plan approval or of a zoning permit, but only for *provision* for the posting of a maintenance guarantee, not for the posting of the maintenance guarantee at that time.

I wish to emphasize that this statement, while it expresses our view as to the meaning of the law, is not meant to be construed as a ruling binding on any party. A definitive ruling can only be issued by a court of competent jurisdiction.

Initially, we note that this letter is not a rule or regulation or any other form of official ruling by the Department of Community Affairs. In any event, the statement that "the performance bond is to be in effect until the improvements are approved or accepted and that the maintenance bond only becomes effective upon approval or acceptance" is consistent with the conclusion reached in this opinion. There is no requirement that a maintenance guarantee become effective before the municipality's final acceptance of the improvements. The only requirement is that the guarantee be provided before filing the subdivision plat.

Builders also argues that the maintenance guarantee cannot be provided until the improvements are completed and accepted because it will not have any insurable interest until that time. However, as previously discussed, there is no requirement that a maintenance guarantee become effective before final acceptance of the improvements. The only requirement is that the developer obtain a maintenance guarantee with a two-year term commencing on the date of final acceptance. Once the improvements are installed and accepted by the municipality, Builders will clearly have an insurable interest.

We have no need to consider the policy arguments presented by the parties and the amicus supporting their respective positions because we are satisfied that, as currently written, *N.J.S.A.* 40:55D–53(a) authorizes a municipality to require a developer to provide both performance and maintenance guarantees before a final subdivision plat will be signed and filed with the county clerk. If this requirement imposes an undue burden upon developers and is not needed to protect the legitimate interests of municipalities, these arguments should be directed to the Legislature.

## II

The determination of the validity of condition one, which requires Builders to complete construction and installation of its improvements "within 18 months from the date of adoption of [the] resolution" granting final subdivision approval, requires review of the statutory time period for filing the approval and the rights such an approval confer upon a developer. *N.J.S.A.* 40:55D–54(a) provides in pertinent part:

> Final approval of a major subdivision shall expire 95 days from the date of signing of the plat unless within such period the plat shall have been duly filed by the developer with the county recording officer. The planning board may for good cause shown extend the period for recording for an additional period not to exceed 190 days from the date of signing of the plat. The planning board may extend the 95-day or 190-day period if the developer proves to the reasonable satisfaction of the planning board (1) that the developer was barred or prevented, directly or indirectly, from filing because of delays in obtaining legally required approvals from other governmental or quasi-governmental entities and (2) that the developer applied promptly for and diligently pursued the required approvals. The length of the extension shall be equal to the period of delay caused by the wait for the required approvals, as determined by the planning board.

Thus, a developer may wait as long as 285 days after the planning board signs the subdivision plat, and for a substantially longer period if it is prevented from filing the plat because of delays in obtaining legally required approvals from other governmental agencies, before even filing a subdivision plat. During the intervening period between the approval and the filing of the plat, the subdivision approval is not perfected and the developer cannot begin selling lots. *See Salvatore v. Trace*, 109 *N.J.Super.* 83, 95, 262 *A.*2d 409 (App.Div.1969), *aff'd o.b.*, 55 *N.J.* 362, 262 *A.*2d 385 (1970); 36 *N.J. Practice, Land Use Law* § 14.66(2) at 331 (David J. Frizell) (2d ed.1999). However, under condition one, the eighteen-month period within which Builders must complete construction of all improvements commenced on the date of the resolution granting final subdivision approval. Therefore, if there were delays in obtaining legally required approvals from other agencies, the period for completing improvements could expire before the final subdivision approval even becomes effective.

Moreover, *N.J.S.A.* 40:55D–52(a) establishes a two-year period during which a developer is protected from changes in zoning law or other rights conferred by final major subdivision approval:

> The zoning requirements applicable to the preliminary approval first granted and all other rights conferred upon the developer pursuant to [*N.J.S.A.* 40:55D–49], whether conditionally or otherwise, shall not be changed for a period of two years after the date on which the resolution of final approval is adopted . . . .

*N.J.S.A.* 40:55D–52(a) confers discretionary authority upon a planning board to grant a developer up to three one-year extensions of this two-year period. In addition, a planning board is required to grant an extension of up to one year if the developer establishes that it was "barred or prevented, directly or indirectly, from proceedings with the development because of delays in obtaining legally required approvals from other governmental entities." *N.J.S.A.* 40:55D–52(d); *see Knowlton Riverside Estates, Inc. v. Planning Bd. of Township of Knowlton,* 347 *N.J.Super.* 362, 368–71, 790 *A.*2d 194 (App.Div.), *certif. denied,* 172 *N.J.* 357, 798 *A.*2d 1270 (2002).

*N.J.S.A.* 40:55D–54(a) and *N.J.S.A.* 40:55D–52(a) contemplate that there may be delays of up to two years, and even longer where approvals of other governmental agencies are required, before the start of a project which has received major subdivision approval. Condition one conflicts with these provisions by requiring a developer to complete all improvements within eighteen months after adoption of the resolution granting major subdivision approval, even though construction of the development may not even begin within that time, either because the developer is precluded from proceeding due to the absence of other required governmental approvals or because it chooses for its own business reasons to delay the project.

This does not mean that a municipality lacks any authority to regulate the time of completion of improvements. In fact, we have previously held that "[a] municipality's authority under *N.J.S.A.* 40:55D–38(c) to adopt 'standards' for improvements and 'provisions ensuring that such facilities shall be completed' includes authority to regulate the time of installation of improve-

ments." *Toll Bros., Inc. v. Township of Greenwich,* 244 *N.J.Super.* 514, 520, 582 *A.*2d 1276 (App.Div.1990). However, "this municipal authority is activated only when a developer actively undertakes to develop a subdivision." *Id.* at 521, 582 *A.*2d 1276. Therefore, condition one, which requires Builders to complete the improvements in its subdivision by a date that may precede such development, is invalid.

Accordingly, we affirm the part of the judgment upholding the validity of condition three, which requires Builders to provide a maintenance guarantee before filing of its subdivision plat, but reverse the part upholding condition one, which requires Builders to complete all improvements within eighteen months of the resolution granting final subdivision approval.