SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

### Shipyard Associates, LP v. City of Hoboken (A-83/84/85-18) (082446)

**Argued January 22, 2020 -- Decided May 5, 2020**

**TIMPONE, J., writing for the Court.**

The Court considers the City of Hoboken's argument that two municipal ordinances -- passed after plaintiff Shipyard Associates, LP (Shipyard), obtained final site plan approval for the two high-rise residential buildings it planned to construct as part of a larger development project -- prohibit residential uses on the City's pier and should therefore operate to halt Shipyard's proposed construction.

Shipyard is the owner of property on the City's waterfront abutting the Hudson River. In 1997, the Hoboken Planning Board (Board) adopted a resolution approving Shipyard's proposal for several luxury high-rise apartment buildings, multiple commercial retail units, parking garages, a park, and a waterfront promenade or walkway. The proposal also included three tennis courts and a tennis pavilion available to the public for a fee on a platform extending into the Hudson River. Shipyard developed most of the property in substantial accordance with the agreement. However, in 2011, Shipyard filed an application with the Board seeking to amend the site plan approval and replace the tennis facilities with two eleven-story residential buildings (the Project).

The City was dissatisfied with the proposed changes and attempted to block Shipyard from moving forward. It opposed Shipyard's request for a necessary permit before the DEP and, after the permit was granted, in court. Shipyard prevailed in that suit. The City also filed suit to compel the construction of tennis facilities per the original agreement. That suit was dismissed. Meanwhile, in July 2012, the Board voted to deny Shipyard's application for the Project without holding a hearing. In response, Shipyard filed suit seeking automatic approval of its application under N.J.S.A. 40:55D-61, a provision of the Municipal Land Use Law (MLUL), based on what it argued to be the Board's failure to act. The court agreed and found that Shipyard's application had automatically approved at the close of the Board's statutorily prescribed period to act: July 2012. All of those trial court determinations were affirmed on appeal.

In late 2013, the City passed two ordinances: Ordinance Z-263 and Ordinance Z-264. The City designated Z-264 specifically as a zoning ordinance adopted pursuant to the MLUL, and its application to the Project would prevent completion of the Project

1

altogether. Z-263 expressly provides that it was enacted pursuant to the City's legislatively delegated police power. It is virtually identical to the DEP's Model Flood Damage Prevention Ordinance and permits construction "seaward of the mean high tide" only for facilities like ports and ship-building or ship-repair facilities or for "open space and outdoor passive and active recreational uses." If Z-263 were applicable here, the Project would not satisfy either of Z-263's permitted uses.

Shipyard brought suit challenging the applicability of the Ordinances to the Project. The trial court held Shipyard's application received final approval in July 2012. The court found that, under the plain terms of N.J.S.A. 40:55D-52(a), any zoning ordinance passed within two years of that time could not apply to the Project. The court therefore granted summary judgment in favor of Shipyard against the City and the intervenors who opposed Shipyard's suit. The Appellate Division affirmed. The Court granted certification. 238 N.J. 377 (2019); 238 N.J. 152 (2019); 238 N.J. 150 (2019).

**HELD:** Both ordinances at issue are unquestionably zoning ordinances subject to the limitations of the MLUL, the plain language of which contains no exception for the retroactive application of changes in zoning requirements within two years of the issuance of a final approval. The City therefore cannot apply either ordinance to the Project, because they became effective within two years of the issuance of Shipyard's final approval. And Shipyard's period of statutory protection has been tolled.

1. The Court first addresses the City's argument that, because Z-263 does not work a change in the zoning requirements, the two-year protection against zoning requirement changes afforded to final approvals under N.J.S.A. 40:55D-52(a) does not apply. The City is mistaken in its characterization of Z-263. The City passed Z-263 to prevent flooding in the wake of Hurricane Sandy. Indeed, the City modeled the ordinance after the DEP's Model Flood Damage Prevention Ordinance. Beyond changing the zoning of land in certain zones, the ordinance specifies floor heights for certain buildings. In "all areas of special flood hazards," Z-263 specifies construction materials and methods by use, mandates the design of utilities, and regulates the manner of subdivisions and new development. Notably, Z-263 establishes a separate permit requirement governed by the Floodplain Administrator, and all appeals and all variance requests under Z-263 are submitted to the same entity that issues land use permits for the City: the Board. Fundamentally, Z-263 is a zoning ordinance because its provisions set specific standards, methods, and uses governing construction -- should it occur at all. (pp. 19-24)

2. The Court next considers the argument that N.J.S.A. 40:55D-52(a) exempts ordinances affecting public health and safety from its bar against retroactive application of changes in zoning requirements, which would mean that the City could apply both Z-263 and Z-264 to bar the Project. N.J.S.A. 40:55D-52(a) provides that "[t]he zoning requirements applicable to the preliminary approval first granted and all other rights conferred upon the developer pursuant to [N.J.S.A. 40:55D-49], whether conditionally or

otherwise, shall not be changed for a period of two years after the date on which the resolution of final approval is adopted . . . ." Manifestly, the statute's plain language does not provide an exception for municipalities to retroactively apply changes in zoning laws relating to public health and safety to final approvals. Nor does B. & W. Associates v. Planning Board of Hackettstown, 242 N.J. Super. 1 (App. Div. 1990), require that such an exemption be read into the statute. In that case, the court jointly considered Sections 49 and 52(a), id. at 3, and, the court's decision ultimately concerned the protections afforded to B & W's preliminary approval, see id. at 2-4. Unlike N.J.S.A. 40:55D-52(a), N.J.S.A. 40:55D-10.5 explicitly allows for the retroactive application of ordinances relating to health and public safety to applications for development, and N.J.S.A. 40:55D-49(a) contains a similar, albeit more limited, exception for preliminary approvals of major subdivisions. The Court declines to read the exceptions from those sections into Section 52(a), which addresses final approvals. It is significant that the Legislature included exceptions for the application of later-passed zoning ordinances relating to public health and safety in Sections 10.5 and 49 but excluded an analogous exception in Section 52(a). And the reference to Section 49 within Section 52(a) simply maintains for the developer with a final approval those zoning requirements that were in place when the developer obtained preliminary approval. In other words, it is a grant of protection to the developer, not a grant of power to the municipality. The plain language of Section 52(a) provides the holder of a final approval with vested rights for two years against any changes in zoning requirements. (pp. 24-29)

3. Having determined that Section 52(a) provides the holder of a final approval with vested rights for two years against even those changes in zoning requirements pertaining to public health and safety, the Court next considers whether Shipyard continues to enjoy the benefits of that protective period. As applied here, Shipyard received final approval for the Project in July 2012 based on the Board's failure to act. The Ordinances became effective less than two years later and, as detailed above, led to protracted litigation culminating in the present decision. The MLUL's tolling provision applies when, during an approval period, "the developer is barred or prevented, directly or indirectly, from proceeding with the development . . . by a legal action instituted . . . to protect the public health and welfare." N.J.S.A. 40:55D-21. Here, the City has prevented Shipyard from moving forward with the Project since early 2012. First, Shipyard's hands were tied from 2012 to 2017 by various actions instituted by the City, whose arguments directly implicated public health and welfare. And the instant case has similarly barred Shipyard from building since 2014; it also involves public health and welfare arguments that are plainly within the ambit of the tolling provision. Shipyard's two-year period of protection under Section 52(a) has been tolled. (pp. 30-32)

**The judgment of the Appellate Division is AFFIRMED.**

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, and SOLOMON join in JUSTICE TIMPONE'S opinion.**

Shipyard Associates, LP,

Plaintiff-Respondent,

v.

City of Hoboken,
a municipal corporation of
the State of New Jersey,

Defendant-Appellant,

and

Fund for a Better Waterfront
and Hudson Tea Buildings
Condominium Association, Inc.,

Defendants/Intervenors-Appellants.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|---|---|
| January 22, 2020 | May 5, 2020 |

Christopher D. Miller argued the cause for appellant City of Hoboken (Maraziti Falcon, attorneys; Joseph J. Maraziti, Jr., of counsel, and Christopher D. Miller, on the briefs).

Renée Steinhagen argued the cause for appellant Fund for a Better Waterfront (New Jersey Appleseed Public Interest Law Center and Eastern Environmental Law Center, attorneys; Renée Steinhagen and Aaron Kleinbaum, on the briefs).

Craig S. Hilliard submitted a brief on behalf of appellant Hudson Tea Buildings Condominium Association, Inc. (Stark & Stark, attorneys; Craig S. Hilliard and Eric S. Goldberg, on the brief).

Kevin J. Coakley argued the cause for respondent Shipyard Associates, LP (Connell Foley, attorneys; Kevin J. Coakley, of counsel, and Nicole B. Dory and Michael J. Affrunti, on the briefs).

Frank G. Marshall, Jr., argued the cause for amicus curiae New Jersey State League of Municipalities (New Jersey State League of Municipalities, attorneys; Frank G. Marshall, Jr., on the brief).

Robert M. Washburn argued the cause for amicus curiae New Jersey Builders Association (Flaster Greenberg, attorneys; Robert M. Washburn, of counsel and on the brief, and Jeremy S. Cole, on the brief).

R. William Potter submitted a brief on behalf of amicus curiae New Jersey Association for Floodplain Management (Potter and Dickson, attorneys; R. William Potter and Peter Dickson, on the brief).

JUSTICE TIMPONE delivered the opinion of the Court.

This appeal is the most recent of several proceedings between Shipyard

Associates, LP (Shipyard) and the City of Hoboken (the City), which is joined

by intervenors Fund for a Better Waterfront (FBW) and Hudson Tea Buildings Condominium Association, Inc. (Hudson Tea) (collectively, appellants).

Initially, as part of a larger development project, Shipyard planned to build tennis facilities on a pier extending into the Hudson River. The City issued land use approvals to that effect. Shipyard then amended that plan, replacing the tennis facilities with two high-rise residential buildings on the pier (the Project). The City ardently opposed that amendment and tried, unsuccessfully, to block the Project by instituting a breach of contract action against Shipyard and a challenge to Shipyard's application for a waterfront development permit.

Now, the City seeks to apply two ordinances -- passed after Shipyard obtained final site plan approval for the high-rises -- that would prohibit residential uses on the pier. In other words, the City asks us to halt Shipyard's proposed construction even though Shipyard's right to build has vested under the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -163.

We find that these are unquestionably zoning ordinances subject to the limitations of the MLUL, the plain language of which contains no exception for the retroactive application of changes in zoning requirements within two years of the issuance of a final approval. The City therefore cannot apply either ordinance to the Project, because they became effective within two years

3

of the issuance of Shipyard's final approval. As such, we affirm the judgment of the Appellate Division.

## I.

We adduce the following facts from three trial court opinions and a decision of the New Jersey Department of Environmental Protection (DEP) that addressed lawsuits between Shipyard and appellants, which are described more fully below.

## A.

Shipyard is the owner of several pieces of property on the City's waterfront abutting the Hudson River. On August 21, 1997, the Hoboken Planning Board (Board) adopted a resolution approving Shipyard's proposal for several luxury high-rise apartment buildings, multiple commercial retail units, parking garages, a park, and a waterfront promenade or walkway. The proposal also included three tennis courts and a tennis pavilion available to the public for a fee on a platform extending into the Hudson River. Shipyard and the City subsequently entered into a developer's agreement memorializing the application approved by the Board.

Shipyard developed most of the property in substantial accordance with the agreement. However, on August 25, 2011, Shipyard filed an application with the Board seeking to amend the site plan approval and replace the tennis

4

facilities with two eleven-story residential buildings. The Board set a date of July 10, 2012, for a hearing on Shipyard's application.

The City was dissatisfied with the proposed changes and attempted to block Shipyard from moving forward. For example, the Project necessitated a new waterfront development permit from the DEP, which the City opposed. Before the scheduled hearing before the Board, Shipyard submitted a revised application to the DEP accounting for the required rehabilitation of the pier to accommodate the two proposed high-rises. Notwithstanding the City's opposition, the DEP issued Shipyard the permit. In an unpublished decision (Shipyard I), the Appellate Division affirmed the DEP's decision and ruled that the City and Hudson Tea -- the appellants in that matter -- were neither constitutionally nor statutorily entitled to an evidentiary hearing. We denied the City's and Hudson Tea's petitions for certification. In re Shipyard Assocs. LP Waterfront Dev. Permit, 230 N.J. 401 (2017); 230 N.J. 397 (2017).

The City also filed suit against Shipyard on March 7, 2012, to compel completion of the construction in accordance with the original developer's agreement that provided for tennis facilities. The trial judge, however, dismissed the lawsuit because the City did not have an interest in Shipyard's properties. The judge explained that the developer's agreement contemplated amendments and, alternatively, existed solely to facilitate the execution of the

5

Board's 1997 resolution issuing site plan approvals to Shipyard. As a result, the judge did not allow the agreement or the City to prevent Shipyard from applying to the Board for a modification of the approvals.

Before the trial judge's ruling, on July 10, 2012, the Board voted to deny Shipyard's application for the Project without holding a hearing. The Board was concerned with the City's pending litigation, among other things, and determined it best not to rule on the merits of Shipyard's application.

In response, Shipyard filed suit seeking automatic approval of its application under the MLUL. Shipyard argued that the Board's denial was an impermissible delay rather than an act. A different trial judge heard the case and agreed, finding that the Board's "complete disregard of its statutory duty to hold a hearing on the merits constitute[d] a failure to act." Such failure to act "within the statutory period compel[led] the enforcement of automatic approval" under N.J.S.A. 40:55D-61, a provision of the MLUL. The judge entered a corresponding order finding Shipyard's application automatically approved. Later, the judge denied the Board's motion for reconsideration and clarified that Shipyard's approval was retroactive to the close of the Board's statutorily prescribed period to act: July 2012.

The Board appealed that decision, and the City appealed the ruling dismissing its breach of contract suit. In an unpublished decision (Shipyard

6

II), the Appellate Division consolidated the cases and affirmed the rulings. We denied certification. Shipyard Assocs., L.P. v. Hoboken Planning Bd., 232 N.J. 148 (2018); 232 N.J. 133 (2018); 232 N.J. 106 (2018).

B.

In late 2013, during the pendency of those proceedings, the City passed two ordinances: Ordinance Z-263 (Z-263) and Ordinance Z-264 (Z-264) (collectively, the Ordinances). The Ordinances became effective in January 2014 and, as found by the trial court below, were "part of a larger push by State and Federal agencies to deal with issues relating to Hurricane Sandy." The City designated Z-264 specifically as a zoning ordinance adopted pursuant to the MLUL. Z-264 provides, in pertinent part, that "no new construction or substantial improvement of existing structures shall be permitted on piers or platforms projecting into or over the Hudson River or Weehawken Cove." The application of Z-264 to the Project would prevent its completion altogether.

Z-263 expressly provides that it was enacted pursuant to the City's legislatively delegated police power. It amends the City's municipal code to reflect the Federal Emergency Management Agency's Advisory Flood Hazard Map. It is virtually identical to the DEP's Model Flood Damage Prevention Ordinance.

7

Z-263 further establishes coastal high hazard areas (V Zones) in which "[a]ll construction shall be landward of the mean high tide." The only exceptions for construction "seaward of the mean high tide" are limited to certain uses: (1) those "located or carried out in close proximity to water," such as port facilities designed to unload cargo and passengers or "ship[-]building and ship[-]repair facilities"; or (2) "open space and outdoor passive and active recreational uses." Notably, the pier in question is seaward of the mean high tide in a V Zone, but if the ordinance were applicable here, the Project would not satisfy either of Z-263's permitted uses.

Z-263 restricts construction in other ways as well. For instance, it establishes an additional permit requirement governed by the City's Floodplain Administrator for all proposed construction in V Zones. It also specifies floor heights for certain elevated buildings. Moreover, in "all areas of special flood hazards," Z-263 provides "specific standards" for construction materials and methods that vary by use, mandates the design of utilities such as water supply and sewage systems, and regulates proposed subdivisions and new development. The Board has jurisdiction over applications for variances from these and other requirements of the ordinance, as well as appeals from decisions of the Floodplain Administrator.

C.

On February 21, 2014, Shipyard filed an action in federal court to challenge the City's proposed application of the Ordinances to the Project. The court dismissed the action without prejudice, allowing Shipyard to re-file in state court to resolve claims arising under New Jersey law.

On March 28, 2016, Shipyard asserted seven claims against the City in the Law Division. A year later, Shipyard filed a motion for summary judgment on two of those claims, which the trial court stayed pending the Appellate Division's resolution of Shipyard II. After the Appellate Division decided Shipyard II, the trial court lifted the stay and Shipyard renewed its motion for summary judgment. The City, joined by intervenors Hudson Tea and FBW, opposed Shipyard's motion and cross-moved for summary judgment seeking to dismiss the same claims.

Shipyard argued that Shipyard II finalized its application for the Project, thereby insulating it from any zoning ordinances passed within two years of its final approval under the MLUL pursuant to N.J.S.A. 40:55D-52(a) (Section 52(a)). Shipyard further contended that it was entitled to summary judgment because, under the Legislature's 2010 revision to the MLUL, only those regulations in effect at the time of an application for development govern that application.

The City claimed that Z-263 could block the Project even though Shipyard obtained final approval.  Although there was little dispute that Z-264 is a zoning ordinance, the City asserted that Z-263 is a general environmental regulation -- not a zoning ordinance -- and therefore not subject to the two-year period of protection in Section 52(a).  Alternatively, the City argued that it could apply both ordinances because Section 52(a) contains an implied exception for the retroactive application of changes in zoning requirements relating to public health and safety.

On October 17, 2017, the trial court entered an order granting Shipyard's motion for summary judgment, denying the City's motion, and dismissing the remaining claims as moot.  The court agreed with Shipyard that, as per the Appellate Division's decision in Shipyard II, Shipyard's application for the Project received final approval in July 2012.  The court found that, under the plain terms of Section 52(a), any zoning ordinance passed within two years of that time could not apply to the Project.  The court also rejected the argument that Section 52(a) incorporated by reference the public health and safety exceptions of two other sections of the MLUL -- N.J.S.A. 40:55D-10.5 and -49 -- because those sections apply to application review and preliminary approvals, respectively, not final approvals.  Because Shipyard had received final approval for the Project on July 10, 2012, and "[t]he plain language of

10

[Section 52(a)] does not contain a health and public safety exception after final approval," the court rejected the City's effort to defeat the Project.

The court further rejected the City's argument that Z-263 was not a zoning ordinance and therefore not subject to the limitations of the MLUL. The court found that Z-263 "fundamentally chang[ed] the zoning of land where the [P]roject was to be built." The court further observed that Z-263 restricts the Property "to recreation use, which has the same effect as a zoning ordinance." The court also emphasized that Z-263 "restricts elevated buildings['] lowest floor height, changes to improved or unimproved real estate[,] and has a special provision for water uses and historic structures." Therefore, "Z-263 . . . does much more than just touch upon the use of land . . . . It actually [a]ffects what and where structures can be built similar to what a typical zoning ordinance does . . . ." Accordingly, the court held that Z-263 was subject to Section 52(a)'s "insulation of a project for two years from changes in the zoning law."

D.

The City and intervenors appealed the trial court's order. The Appellate Division, however, affirmed, "conclud[ing] that the trial judge reached the correct result, and little further discussion is required." The court added only two comments. First, the Appellate Division recognized that the trial court

11

correctly ruled that Z-263 would "completely change[] the permitted use of property in a zone" and therefore was a zoning ordinance subject to Section 52(a).

Second, the Appellate Division observed that the scope of its decision was limited because resolution of this case does not require determining whether a zoning ordinance can modify a previously granted final approval. The court reasoned that the public health and safety exception from N.J.S.A. 40:55D-49 (Section 49), which appellants asked the court to read into Section 52(a), only allows a new zoning ordinance to modify a preliminary approval, not vitiate it. The court underscored that, here, application of the Ordinances to the Project would require the complete "revocation of a previously-granted final approval, a result contrary to the plain wording of [Section 52(a)]." Accordingly, the court concluded that, "even if [S]ection 52(a) were construed as implicitly including the exceptions set forth in [Section 49], appellants would not prevail in this case."

We granted certification. 238 N.J. 377 (2019); 238 N.J. 152 (2019); 238 N.J. 150 (2019). We also granted leave to the New Jersey State League of Municipalities (NJLM), New Jersey Builders Association (NJBA), and New Jersey Association for Floodplain Management (NJAFM) to participate as amici curiae.

12

The City argues that the trial court and Appellate Division erred in finding that Section 52(a) bars the City from applying the Ordinances to the Project. Although the City acknowledges that Z-264 is a zoning ordinance, it contends that Z-263 is more aptly characterized as a flood control or general environmental ordinance, and therefore escapes the restrictions of the MLUL. Specifically, the City highlights that it enacted Z-263 pursuant to the police power to amend the City's flood-damage-prevention-requirements, not the City's zoning requirements. The City submits that its Floodplain Administrator administers Z-263's permit requirement, independent from the Board's site plan review and approval process. As Z-263 does not implicate the planning and zoning concerns of the MLUL, the City concludes it is not subject to the two-year insulation afforded to final approvals under Section 52(a).

To the extent this Court disagrees, the City argues that we should construe Section 52(a) in harmony with the rest of the MLUL, which contains various exceptions for the application of regulations pertaining to public health and safety. In particular, the City suggests that we read the public health and

13

safety exceptions from N.J.S.A. 40:55D-10.5 (Section 10.5) and Section 49 into Section 52(a).

Hudson Tea relies on and adopts the City's arguments. FBW joins as well, adding that a developer's vested rights cannot trump the enforcement of valid public safety regulations. FBW further observes that Section 52(a) expressly incorporates the rights conferred upon a developer with a preliminary approval in Section 49. FBW reasons that Section 52(a) incorporates all of the provisions of Section 49, thereby allowing a municipality to modify a developer's final approval by changing the zoning requirements that relate to public health and safety.

The NJLM agrees with appellants that the MLUL should not bar application of the Ordinances and argues that the purpose of the statute is to facilitate development in a manner that promotes public health and safety. Accordingly, the NJLM recommends that we effectuate that purpose by construing Section 52(a) to contain an exception for zoning ordinances that affect public health and safety. Likewise, the NJAFM contends that this Court should apply the Ordinances to the Project because they were passed in response to legitimate public health and safety concerns, intensified by the rise in sea levels and the severity and frequency of flooding during severe storm events. The NJAFM suggests that, "where public health and safety are at

14

stake," we "should tip the scales of justice in favor of expansively reading the authority of government . . . to enact and broadly enforce protection laws and regulations."

B.

Shipyard first contests the City's characterization of Z-263 as something other than a zoning ordinance. Shipyard points out that Z-263 changes the permitted uses in V Zones and elsewhere, establishes a new permit requirement, and contains a number of provisions regulating construction, utilities, subdivisions, and new development. Shipyard asserts that, no matter what the City calls Z-263, it operates as a zoning ordinance and cannot subvert the requirements of the MLUL.

Shipyard also opposes appellants' recommendation to read an exception for public health and safety into Section 52(a). Shipyard underscores that the plain language of Section 52(a) provides for no such exception. Shipyard also echoes the Appellate Division's ruling that reading the public health and safety exception from Section 49 into Section 52(a) would still not allow the City to block the Project because that exception authorizes only modification of a preliminary approval. Finally, Shipyard disputes appellants' reading of the MLUL as inconsistent with the Legislature's intent to standardize the approval process and shield development applications from regulatory harassment.

15

Shipyard urges us to enforce the terms of Section 52(a) as written, thereby precluding application of the Ordinances to the Project. Shipyard adds that we should toll the two-year period of statutory protection in light of appellants' endless litigation against the Project.

In support of Shipyard's position, the NJBA adds that reading Section 52(a) in conjunction with Sections 10.5 and 49 illustrates that the Legislature contemplated greater protections for developers at each successive stage of the development approval process. The NJBA reasons that the Legislature intentionally omitted a public health and safety exception from Section 52(a) in order to protect developers that have invested substantial resources into the process to obtain final approvals.

III.

In reviewing the trial court's grant of summary judgment in favor of Shipyard, we use the same standard that court employed. Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016). We will affirm if there are no genuine issues of material fact and the moving party is entitled to summary judgment as a matter of law. See Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 539-40 (1995); R. 4:46-2. As the non-moving party, the City is entitled to "the benefit of all favorable evidence and inferences presented in the record before us." Murray v. Plainfield Rescue Squad, 210 N.J. 581, 585 (2012).

16

As a threshold matter, we find it necessary to circumscribe the issues on appeal. We will not consider the merits of either Shipyard I or Shipyard II. Put differently, our review assumes Shipyard correctly received both final approval and a waterfront development permit, and that the City's lawsuit based on the developer's agreement was properly dismissed. Additionally, we will not decide whether the Ordinances were valid exercises of the City's police or zoning powers. Instead, review of the grant of summary judgment turns upon two discrete questions of law: Is Z-263 a zoning ordinance subject to the MLUL; and, if so, does Section 52(a) contain an exception for retroactive application of changes in zoning requirements relating to public health and safety to projects that have obtained final approval?

We review both questions of statutory construction de novo. 388 Route 22 Readington Realty Holdings, LLC v. Township of Readington, 221 N.J. 318, 338 (2015). Our primary goal in interpreting a statute "is to discern and effectuate the intent of the Legislature." Murray, 210 N.J. at 592. This Court first considers "the statute's plain language, ascribing to the words used 'their ordinary meaning and significance.'" Ibid. (quoting DiProspero v. Penn, 183 N.J. 477, 492 (2005)). "When the provisions of a statute are clear and unambiguous, they should be given their literal significance, unless it is clear

17

from the text and purpose of the statute that such meaning was not intended." Turner v. First Union Nat'l Bank, 162 N.J. 75, 84 (1999).

We review statutory language "in context with related provisions so as to give sense to the legislation as a whole." DiProspero, 183 N.J. at 492. For instance, "[w]here [the Legislature] includes particular language in one section of the statute but omits it in another section of the same [a]ct, it is generally presumed that [the Legislature] acts intentionally and purposely in the disparate inclusion or exclusion." DCPP v. R.L.M., 236 N.J. 123, 148 (2018) (second, third, and fourth alterations in original) (quoting DYFS v. A.L., 213 N.J. 1, 21 (2013)).

Importantly, "[i]t is not our function to rewrite a plainly written statute or to presume that the Legislature meant something other than what it conveyed in its clearly expressed language." Murray, 210 N.J. at 592. Accordingly, we consider extrinsic interpretative aids, such as legislative history, only "when the statute is ambiguous, leading to more than one plausible interpretation; it leads to an absurd result inconsistent with any legitimate public policy objective; or it is at direct odds with an overall statutory scheme." Ibid.

IV.

A.

First, we address the City's argument that, because Z-263 does not work a change in the zoning requirements, the two-year protection against zoning requirement changes afforded to final approvals under Section 52(a) does not apply. If the City were correct, Z-263 would block the Project. We find, however, that the City is mistaken in its characterization of Z-263.

To be sure, municipalities do not have the inherent power to zone; rather, "[z]oning is a police power that is vested in the legislative branch of government." Rumson Estates, Inc. v. Mayor & Council of Fair Haven, 177 N.J. 338, 349 (2003). The Legislature assigned zoning powers to municipalities in the MLUL, which is "a comprehensive statute that allows municipalities to adopt ordinances to regulate land development in a manner which will promote the public health, safety, morals and general welfare." N.J. Shore Builders Ass'n v. Township of Jackson, 199 N.J. 38, 53 (2009) (internal quotation marks omitted) (quoting Rumson Estates, 177 N.J. at 349). Consequently, a municipality's zoning power must "be exercised in strict conformity with the delegating enactment -- the MLUL." Price v. Himeji, LLC, 214 N.J. 263, 284 (2013) (quoting Nuckel v. Borough of Little Ferry Planning Bd., 208 N.J. 95, 101 (2011)).

19

Section 52(a), which applies to final approvals of site plans or major subdivisions, provides, in part, that

> [t]he zoning requirements applicable to the preliminary approval first granted and all other rights conferred upon the developer pursuant to [N.J.S.A. 40:55D-49], whether conditionally or otherwise, <u>shall not be changed for a period of two years after the date on which the resolution of final approval is adopted</u> . . . .
>
> [(emphasis added).]

Because it is undisputed that Shipyard received final approval for its plans, Section 52(a) would appear to prohibit the retroactive application of Z-263 to the Project -- if Z-263 is in fact a zoning ordinance subject to the MLUL's requirements.

In <u>Jackson</u>, we considered whether an ordinance that, upon the removal of certain trees, required property owners either to replace the trees or pay into a public tree-planting fund, was a zoning ordinance subject to the MLUL. 199 N.J. at 49. At issue was whether to review the validity of the ordinance under the heightened standard of review that governs ordinances subject to the MLUL. <u>Id.</u> at 52.

We held that the ordinance was not a zoning ordinance subject to the MLUL. <u>Id.</u> at 54. In rendering our decision, we first noted that the municipality explicitly enacted the ordinance under the police power statute. <u>Ibid.</u> We then analyzed the disputed ordinance and determined that,

20

> [a]lthough it touches on the use of land, the ordinance is not a planning or zoning initiative that necessarily implicates the MLUL. Indeed, there are numerous ordinances, for example, health codes, environmental regulations, building codes, and laws regulating the operation of particular businesses, that touch on the use of land, but are not within the planning and zoning concerns of the MLUL. Those ordinances are enacted pursuant to the general police power and apply to everyone. That is the nature of the tree removal ordinance at issue here: it is a generic environmental regulation, and not a planning or zoning initiative.
>
> [Ibid. (emphases added).]

The Appellate Division drew guidance from our discussion in Jackson when tasked with determining whether an ordinance that restricted smoking inside tobacco retail stores to "pre-purchase sampling" for "no more than 2 minutes" was subject to the MLUL. Sparroween, LLC v. Township of West Caldwell, 452 N.J. Super. 329, 334 (App. Div. 2017). In that case, owners of a tobacco retail store argued that the ordinance was a land use ordinance and that their store was "a pre-existing non-conforming use exempt from [its] prohibitions" under the MLUL. Id. at 338. The Appellate Division disagreed. Id. at 338-39. Citing our decision in Jackson, the Appellate Division reasoned that "many ordinances," like the smoking ordinance, "touch on the use of land, but are not within the planning and zoning concerns of the [MLUL]." Id. at 339. Accordingly, the Appellate Division held that the smoking ordinance was "a valid municipal health ordinance" not subject to the MLUL. Ibid.

21

According the City all favorable inferences, Murray, 210 N.J. at 584-85, we do not doubt that the City passed Z-263 to prevent flooding in the wake of Hurricane Sandy. Indeed, the City modeled the ordinance after the DEP's Model Flood Damage Prevention Ordinance. The City also enacted Z-263 pursuant to its police power, a fact we found significant in Jackson. However, we agree with the trial court that, "even if a zoning ordinance has an effect on public health and safety, or is motivated by health and public safety concerns, that does not re-characterize a zoning ordinance as a general police power ordinance." As in Jackson, then, we will consider not only how the municipality characterizes the ordinance, but also how the ordinance functions in practice.

To that end, we must look no further than how Z-263 impacts the Project to understand why it is a zoning ordinance. Z-263 allows only two uses for construction seaward of the mean high tide in V Zones: (1) uses "located or carried out in close proximity to water," such as port facilities designed to unload cargo and passengers or "ship[-]building and ship[-]repair facilities"; or (2) "open space and outdoor passive and active recreational uses." Shipyard planned to construct the Project in a V Zone seaward of the mean high tide. Before the enactment of Z-263, Shipyard could build residential high-rises on the pier, but Z-263's winnowing of the permissible uses in V Zones eliminated

22

any possibility of moving forward with the Project. We agree with the trial court that "Z-263 fundamentally chang[es] the zoning of land where the [P]roject was to be built."

Z-263 is also readily distinguishable from the ordinances at issue in Jackson and Sparroween. Those ordinances did not place limits on where or how one could build. They regulated subject matter -- planting trees and smoking, respectively -- divorced from typical "planning and zoning concerns." Jackson, 199 N.J. at 54. For those reasons, they simply "touch[ed] on the use of land." Ibid.

But here, we find that Z-263 is unmistakably a "planning or zoning initiative." Ibid. Beyond changing the zoning of land in V Zones, the ordinance specifies floor heights for certain elevated buildings. In "all areas of special flood hazards," Z-263 specifies construction materials and methods by use, mandates the design of utilities, and regulates the manner of subdivisions and new development. Notably, Z-263 establishes a separate permit requirement governed by the Floodplain Administrator. We find it significant that appeals of the Floodplain Administrator's decisions and all variance requests under the ordinance are submitted to the same entity that issues land use permits for the City: the Board. Fundamentally, we find that Z-263 is a

23

zoning ordinance because its provisions set specific standards, methods, and uses governing construction -- should it occur at all.

For those reasons, we reject the argument that Z-263 is exempt from the strictures of the MLUL. We therefore turn to the alternative argument that Section 52(a) of that statute exempts ordinances affecting public health and safety from its bar against retroactive application of changes in zoning requirements. Appellants argue that Section 52(a) does incorporate such an exemption and that the City can therefore apply both Z-263 and Z-264 to the Project.

B.

Once again, we begin by reviewing the plain language of Section 52(a), according to which

> [t]he zoning requirements applicable to the preliminary approval first granted and all other rights conferred upon the developer pursuant to [N.J.S.A. 40:55D-49], whether conditionally or otherwise, shall not be changed for a period of two years after the date on which the resolution of final approval is adopted . . . .

Manifestly, the statute's plain language does not provide an exception for municipalities to retroactively apply changes in zoning laws relating to public health and safety to final approvals. Despite the absence of such an exception, appellants repeatedly cite B. & W. Associates v. Planning Board of Hackettstown, 242 N.J. Super. 1 (App. Div. 1990), for the proposition that

24

Section 52(a) exempts the retroactive application of ordinances affecting public health and safety.

We read that case differently. There, the Appellate Division held that B. & W. Associates (B & W) could use its industrial property for warehousing even though the Town of Hackettstown had removed warehousing from the permissible list of uses in the property's zone after B & W received preliminary approval. Id. at 2, 4. The court construed the MLUL to guarantee B & W the right to use the lot in question for warehousing despite the subsequent change to zoning laws. Id. at 4.

Because B & W also had final approvals for two other lots, the court jointly considered Sections 49 and 52(a). Id. at 3. We recognize that, taken out of context, the court's reasoning could seemingly apply equally to both provisions and therefore suggest that municipalities can apply changes in zoning laws relating to public health and safety to final approvals. See id. at 4 ("While a municipality is granted continuing authority to change or amend its ordinances, absent a problem of public health and safety it may not do so to the detriment of an applicant who has received prior subdivision approval for the time specified in the statute." (emphasis added)). Yet, the court never opined on a zoning ordinance affecting public health and safety; rather, the thrust of the opinion was to acknowledge that the MLUL protected B & W's property

25

from changes in permitted uses. Id. at 4 ("The [MLUL] does not countenance such a change in the 'rules of the game' upon which B & W has justifiably relied." (quoting Hilton Acres v. Klein, 35 N.J. 570, 580 (1961))). And, the court's decision ultimately concerned the protections afforded to B & W's preliminary approval. See id. at 2-4. Accordingly, we read the dicta highlighted by appellants to apply only to Section 49, and we consider their incorporation-by-implication argument as a novel question.

As indicated above, Section 52(a) does not contain an exception for ordinances that affect health and public safety. Section 10.5, in contrast, explicitly allows for the retroactive application of ordinances relating to health and public safety to applications for development. See N.J.S.A. 40:55D-10.5 ("Any provisions of an ordinance, except those relating to health and public safety, that are adopted subsequent to the date of submission of an application for development, shall not be applicable to that application for development."). Section 49 contains a similar, albeit more limited, exception for preliminary approvals of major subdivisions. See N.J.S.A. 40:55D-49(a) ("[N]othing herein shall be construed to prevent the municipality from modifying by ordinance such general terms and conditions of preliminary approval as relate to public health and safety . . . .").

26

We decline to read the exceptions from Sections 10.5 and 49 -- allowing municipalities to retroactively apply zoning ordinances affecting public health and safety -- into Section 52(a). By their own terms, those sections apply only to "application[s] for development" and "preliminary approval[s]," not final approvals. See N.J.S.A. 40:55D-10.5, -49. We find it significant that the Legislature included exceptions for the application of later-passed zoning ordinances relating to public health and safety in Sections 10.5 and 49 but excluded an analogous exception in Section 52(a). We presume the Legislature acted deliberately in doing so. See R.L.M., 236 N.J. at 148.

Considering Section 52(a) in context with Sections 10.5 and 49 "so as to give sense to the legislation as a whole," DiProspero, 183 N.J. at 492, we agree with the NJBA's view that the Legislature likely contemplated greater protections for developers at successive stages of the development approval process. Indeed, zoning ordinances affecting public health and safety may govern applications for development, N.J.S.A. 40:55D-10.5, but municipalities may only "modify[] by ordinance such general terms and conditions of preliminary approval," N.J.S.A. 40:55D-49(a) (emphasis added), and the MLUL makes no provision for municipalities to apply new zoning ordinances to final approvals, N.J.S.A. 40:55D-52(a).

27

In addition, we reject appellants' argument that Section 52(a) incorporates a public health and safety exception by reference to the "preliminary approval first granted and all other rights conferred upon the developer pursuant to [Section 49]." That language simply maintains for the developer with a final approval those zoning requirements that were in place when the developer obtained preliminary approval. In other words, it is a grant of protection to the developer, not a grant of power to the municipality. See Friends of Peapack-Gladstone v. Borough of Peapack-Gladstone Land Use Bd., 407 N.J. Super. 404, 426 (App. Div. 2009) (holding that, although the developer's period of preliminary approval terminated by operation of law, "the developer's protection from rezoning changes was re-established . . . when the Board granted final major subdivision approval").

In short, we find no reason to import an exception into Section 52(a) where the Legislature did not provide one. We emphasize that "[i]t is not our function to rewrite a plainly written statute or to presume that the Legislature meant something other than what it conveyed in its clearly expressed language." Murray, 210 N.J. at 592. Therefore, we find that the plain language of Section 52(a) provides the holder of a final approval with vested rights for two years against any changes in zoning requirements. See William M. Cox & Stuart R. Koenig, N.J. Zoning and Land Use Administration § 23-

28

5.2 at 463 (2019) ("A final approval of a site plan grants a developer vested rights against changes in the zoning requirements for a further period of two years after the date of the adoption of a resolution of final approval."); see also Darst v. Blairstown Twp. Zoning Bd. of Adjustment, 410 N.J. Super. 314, 338 (App. Div. 2009) (construing Section 52(a) to provide developers with "the right to implement their site plan after its final approval, [a right that] could not be removed from them within the two-year statutory period"); Britwood Urban Renewal, LLC v. City of Asbury Park, 376 N.J. Super. 552, 570 (App. Div. 2005) ("[O]nce the final site plan application was approved, [the developer's] rights were vested and the [c]ity could not thereafter impose further conditions on that approval."); R.J.P. Builders, Inc. v. Township of Woolwich, 361 N.J. Super. 207, 216 (App. Div. 2003) (observing that Section 52(a) "establishes a two-year period during which a developer is protected from changes in zoning law or other rights conferred by final . . . approval").

Having determined that Section 52(a) provides the holder of a final approval with vested rights for two years against even those changes in zoning requirements pertaining to public health and safety, we next consider whether Shipyard continues to enjoy the benefits of that protective period.

C.

As applied here, Shipyard received final approval for the Project in July 2012 based on the Board's failure to act on Shipyard's application, as found in Shipyard II. The Ordinances became effective less than two years later in January 2014 and, as detailed above, led to protracted litigation culminating in the present decision.

The MLUL's tolling provision applies when, during an approval period,

> the developer is barred or prevented, directly or indirectly, from proceeding with the development otherwise permitted under such approval by a legal action instituted . . . to protect the public health and welfare or by a directive or order issued by any State agency, political subdivision or court . . . and the developer is otherwise ready, willing and able to proceed with said development . . . .

[N.J.S.A. 40:55D-21.]

Here, the City has prevented Shipyard from moving forward with the Project since early 2012. First, Shipyard's hands were tied from 2012 to 2017 by various actions instituted by the City, including its lawsuits and ensuing appeals in both Shipyard I and II. See, e.g., Friends of Peapack-Gladstone, 407 N.J. Super. at 429 ("As a separate basis for tolling, the filing of the first lawsuit by plaintiff . . . also substantially thwarted the developer's ability to proceed with construction."). Moreover, the City's arguments in those cases directly implicated public health and welfare, as contemplated by the tolling

30

provision. As just one example, the City argued to DEP in Shipyard I "that the [P]roject will adversely impact public health, safety, traffic, the environment, and enforcement of local ordinances."

Second, although Shipyard prevailed in those appeals, the instant case has similarly barred Shipyard from building since 2014. See id. at 431 ("[T]he pendency of the current appeal and the underlying Law Division proceedings on plaintiff's second lawsuit (which have consumed more than two years to date) tolled the time for construction . . . ."). To that end, the City has repeatedly asserted that the Ordinances mandate retroactive application because they relate to public health and safety -- arguments that are plainly within the ambit of the tolling provision.

We find the litigation that has given rise to Shipyard I, II, and this case has thwarted Shipyard's proposed construction since it received final approval in 2012 and has therefore tolled the two-year period of protection against changes in zoning requirements under Section 52(a).

D.

In sum, we hold that Z-263 is a zoning ordinance subject to the limitations of the MLUL. And, although Sections 10.5 and 49 contain exceptions to the bar against retroactive application of changes in zoning requirements to applications and preliminary approvals, respectively, we find

31

no similar exception applicable to final approvals in Section 52(a). The City therefore cannot use either Z-263 or Z-264 to amend the zoning requirements for the Project, as both ordinances became effective during Shipyard's two-year period of insulation under Section 52(a). Further, we find that Shipyard's two-year period of protection under Section 52(a) has been tolled.

V.

The judgment of the Appellate Division is affirmed. Consistent with this opinion, we add only that Shipyard's period of statutory protection has been tolled.

CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, and SOLOMON join in JUSTICE TIMPONE'S opinion.